STATE of Iowa, Appellee,

v.

Daniel Ray OWENS, Appellant.

No. 87–444.

Supreme Court of Iowa.

Jan. 20, 1988.

Robert A. Wright, Jr., Des Moines, for appellant.

Mark Hunacek, Asst. Atty. Gen., Ames, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

Daniel Ray Owens contends in this appeal that the district court erred by denying his motion to suppress the results of a urine test taken under the implied consent law, chapter 321B. The test was given by police officers following an automobile accident in which Owens was injured and another driver was killed.

Owens alleges the officers lacked reasonable grounds to require him to submit to chemical testing pursuant to Iowa Code sections 321B.3 and 321B.4 (1985). He also alleges he submitted to the urine test only after the officers threatened to use physical force to make him take a blood test.

Owens argues this supposed threat was a violation of his statutory and due process rights, making the results of the subsequent urine test inadmissible in his trial on charges of involuntary manslaughter and operating while intoxicated (OWI). Because we do not think the district court erred by admitting the test results, we affirm its ruling and allow Owens' involuntary manslaughter and OWI convictions to stand.

In June 1986, while driving in Des Moines, Owens collided with another auto-mobile. The other driver died at the scene of the accident. Because Owens had also suffered injuries, he was taken to a hospital.

Among the police officers investigating the collision was Bob Webber, who specializes in alcohol-related driving offenses. Officer Webber learned at the scene of the accident that another officer had smelled alcohol on Owens' breath.

At the hospital, approximately ninety minutes after the accident, Webber gave Owens a preliminary breath test, which showed a blood-alcohol level somewhat below the legal limit. The officer then requested a blood test, but Owens' wife, who was present, stated "they needed to talk to an attorney first." The officer agreed and said he would wait.

Owens' attorney, an experienced criminal lawyer who has handled a number of OWI cases, arrived at the hospital about three hours after the accident. After conferring with Owens, the attorney told police officers that Owens "was not giving a sample of anything."

At this point, one of the several officers present allegedly said that if Owens did not take a test voluntarily, a warrant for the blood test would be obtained and forcibly executed. The district court, however, noted that police testimony did not confirm this statement. The court also found that a warrant would have been justified under the circumstances.

After the alleged threat, Owens' attorney requested that his client be given a more accurate breath test rather than a blood test. The officers refused because a breath testing instrument was not available at the hospital and there was not time, within the statutory limits for testing, to take Owens to such an instrument.

The attorney then advised Owens to take a urine test, which he did. The test showed a blood-alcohol level above the legal limit.

Owens was charged with OWI and involuntary manslaughter. *See* Iowa Code §§ 321.281, 707.5(1). Before trial he moved

to suppress the urine test results on due process and statutory grounds.

The district court denied the motion. The court also denied a motion to reconsider, finding the alleged threat irrelevant because physical compulsion would have been within valid police powers. Owens was eventually convicted of both OWI and involuntary manslaughter.

On appeal, Owens offers three arguments for suppressing the test results and reversing his convictions. First, he maintains the police officers did not have the reasonable grounds required by the implied consent law to request a blood test. Second, he contends the officers' failure to offer an alternate test after he refused the blood test denied him the procedure required by statute and the due process clause of the United States Constitution. Third, Owens argues that the threat of force violated his substantive rights under the due process clause and the Iowa Code.

Our review of the constitutional issues here is de novo, which involves an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Schubert*, 346 N.W.2d 30, 32 (Iowa 1984). In considering the statutory questions, however, we sit only to correct errors of law. *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975).

I. *Reasonable Grounds to Test.*

■ Owens' initial contention is that the police officers did not have the statutory "reasonable grounds" to request a blood test. He first asserts that the request for a preliminary breath test was based on secondhand knowledge, implicitly arguing that the preliminary breath test itself should not have been given. Next, he argues the preliminary test results were not reasonable grounds for further testing because they showed a blood-alcohol level below the legal limit. We disagree that

these facts show a lack of reasonable grounds to test.

■ First, reasonable grounds to request the preliminary test, as required by section 321B.3,[1] did exist. The reasonable grounds test is met when the facts and circumstances known to the officer at the time action was required would have warranted a prudent person's belief that an offense had been committed. *Crosser v. Iowa Dep't of Pub. Safety*, 240 N.W.2d 682, 685 (Iowa 1976). Further, it is well established that when police officers are acting in concert, the knowledge of one is presumed shared by all. *Schubert*, 346 N.W.2d at 32; *accord State v. Thornton*, 300 N.W.2d 94, 97 (Iowa 1981).

■ Hence, in Owens' case, the requesting officer is presumed to have had knowledge of the alcohol odor on Owens' breath, even though he knew of it only through another officer. Such knowledge, together with the fact that Owens was involved in a fatal motor vehicle collision, certainly gave the requesting officer reasonable grounds to believe that Owens had violated Iowa Code section 321.281 and was therefore eligible for a preliminary test. *See* Iowa Code § 321B.3.

And even without this knowledge, the officer had authority under the statute to request a preliminary test: such a request is proper when "the operator has been involved in a motor vehicle collision resulting in ... death," *id.*

■ Next, it is clear that the officers had statutory authority to request further testing. Under section 321B.4(1), a blood test may be requested if the officer has reasonable grounds to believe the driver was violating section 321.281 and, among other possibilities, the driver was involved in a collision resulting in death. In Owens' case, the latter condition was unquestionably satisfied.

---

1. Section 321B.3 provides in pertinent part:
 When a peace officer has reasonable grounds to believe that a motor vehicle operator may be violating or has violated section 321.281 [OWI], or the operator has been involved in a motor vehicle collision resulting in injury or death, the peace officer may re-

quest the operator to provide a sample of the operator's breath for a preliminary screening test.... The results of this ... test may be used for the purpose of deciding whether an arrest should be made and whether to request a chemical test authorized in this chapter....

The reasonable grounds test was also satisfied. At the time the officer requested the blood test, he knew not only that Owens had had alcohol on his breath, but also that a preliminary breath test showed a blood-alcohol level of .08, which is slightly below the legal limit of .10. That the level was somewhat below the limit is not significant here. The preliminary breath test is for "screening" only, Iowa Code § 321B.3, and is not an accurate measure of blood-alcohol concentration, *State v. Deshaw*, 404 N.W.2d 156, 158 (Iowa 1987).

We agree with the State that inaccuracy can cut both ways—the results may be too low or too high. That the test result was less than the legal limit does not automatically eliminate any reasonable grounds for believing Owens was driving while intoxicated. If, as in this case, the preliminary results showed the presence of alcohol, a prudent person would be warranted in requesting a more accurate test. This is especially true when, as here, the preliminary results were only slightly below the legal limit.

We hold that the request for a blood test here was clearly warranted by the facts and circumstances known to the requesting officer.

II. *Procedural and Substantive Rights Under the Due Process Clause and the Iowa Code.*

Owens also argues that the alleged threat violated his procedural and substantive rights under the Iowa Code and the due process clause of the fourteenth amendment of the United States Constitution. We disagree.

A. *Procedural rights.* Owens contends his statutory and due process procedural rights were violated when, after he refused the blood test, the officers threatened to get a search warrant instead of offering him an alternate test as apparently required by Iowa Code section 321B.4(2).[2] We find no merit in this argument.

■ Putting aside, for a moment, what the statute requires, we think it is well settled that the due process clause does not require the police to offer an alternate test. Since a blood test can be *forced* upon an unconsenting driver without violating due process, *South Dakota v. Neville*, 459 U.S. 553, 559 & n. 9, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 756 (1983); *Schmerber v. California*, 384 U.S. 757, 758–60, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908, 912–13 (1966), we cannot see how the due process clause could require the offer of an alternate test if a blood test is refused. *Cf. State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981) (driver's right to refuse test is not part of the procedural due process rights).

■ We likewise see no statutory violation here. Section 321B.4(2) allows the officer to determine which of the four substances, breath, blood, saliva, or urine, shall be tested. If the driver refuses the blood test, the statute goes on to say that the "officer shall then determine which one of the other three substances shall be tested and shall offer the test." In this case, a breath testing instrument was not readily available, leaving the officer a choice between a saliva and urine test. Owens was given his choice. He picked the urine test. This was more than what the statute required.

We hold that neither statutory nor due process procedural rights were violated here.

B. *Substantive rights.* Additionally, Owens claims his substantive rights under the due process clause and the Iowa Code were denied by the officers' alleged threat

---

**2.** Section 321B.4(2) provides:

The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested. Refusal to submit to a chemical test of urine, saliva or breath is deemed a refusal to submit, and section 321B.13 [revocation of driver's license resulting from refusal to submit] applies. A refusal to submit to a chemical test of blood is not deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other three substances shall be tested and shall offer the test. If the peace officer fails to provide a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321B.13.

to obtain a search warrant and forcibly execute it, if necessary, to obtain a blood specimen. He argues such a threat violates the "sense of justice" that the due process clause was intended to guarantee and is contrary to the statutory sanctions for resisting withdrawal of a specimen pursuant to a warrant.

1. *The due process challenge.* The United States Supreme Court has said that "convictions cannot be brought about by methods that offend 'a sense of justice'" or "shock[ ] the conscience." *Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183, 190 (1952). In applying this principle, the Supreme Court has ruled that the due process clause allows a state to force a person suspected of driving while intoxicated to submit to a blood-alcohol test, as long as the force is not inappropriate or accompanied by police violence, and reasonable requests for alternate tests are respected. *Schmerber,* 384 U.S. at 760 & n. 4, 86 S.Ct. at 1830, 16 L.Ed.2d at 913; *accord Neville,* 459 U.S. at 559 & n. 9, 103 S.Ct. at 920, 74 L.Ed.2d at 756.

 We do not think the alleged threat to secure a search warrant and to restrain Owens while a blood specimen was being taken is the sort of "brutal conduct" that was held in *Rochin* to have offended due process principles. *Compare Rochin,* 342 U.S. at 173–74, 72 S.Ct. at 209–10, 96 L.Ed. at 190–91 (forcing emetic solution into defendant's stomach to extract narcotic capsules). Moreover, looking at the totality of the circumstances, we find that Owens' consent to the urine test was voluntary. *See Downing v. Iowa Dep't of Transp.,* 415 N.W.2d 625, 627 (Iowa 1987). Our conclusion is supported by the record in several respects.

First, the police did not initiate physical violence, did not respond to resistance with inappropriate force, and did not refuse a reasonable request to undergo a different form of testing. In fact, as we said earlier, the police accepted Owens' own offer to take a urine test, which is consistent with the precautionary notes on police behavior in *Schmerber* and *Neville.*

Second, we view the decision to submit to chemical testing as a reasonable and informed decision to cooperate with the officers' investigation rather than a decision coerced by threat. A review of the record reveals the following scenario. After conferring with Owens, the attorney told the police that his client would not submit to testing. According to the attorney, the police responded that they would seek a warrant and forcibly execute it if necessary. Realizing that some form of testing was inevitable, the attorney sought to bargain for the test indicating a lower alcohol content.[3] Considering the totality of these circumstances, we think Owens' decision to submit was voluntary and not coerced. *See Knous,* 313 N.W.2d at 512.

Third, contrary to Owens' contention, we do not think the alleged threat vitiated his consent to testing. The officers were simply informing Owens through his attorney what they were already entitled to do as a matter of law: to secure a warrant and use force, if necessary, to carry it out. *See United States v. Culp,* 472 F.2d 459, 461 n. 1 (8th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973) (law enforcement officers' statement that they will attempt to obtain or are getting a warrant does not serve to invalidate an otherwise consensual search); *see also United States v. Faruolo,* 506 F.2d 490, 493–94 (2d Cir. 1974). Owens' attorney conceded he was

3. Responding to questions from the prosecutor, the attorney, who did not represent Owens at the suppression hearing or trial, testified:

A. When they said they had a judge ready to be called to give an order for withdrawal of the blood, that is when I said, "If that's the case, then we elect to do the breath test," and that's when they refused to give him that.
. . . .

Q. As a matter of fact, didn't you ask someone which test would provide a lower result? A. Yes.
Q. Blood or urine? A. Yes.
Q. That's my question. That conversation, what was the result? [The technician] told you to take the urine? That that would produce a lower result than blood? A. It was decided to take the urine test. . . .

aware of the officers' legal powers in this respect.[4]

■ 2. *The statutory challenge.* In contrast to the permissible use of force under federal due process principles, an earlier version of our implied consent law did not permit the use of any force. A driver's refusal to submit to chemical testing ended the matter. *State v. Hitchens,* 294 N.W.2d 686, 687–89 (Iowa 1980) (results of blood test taken pursuant to search warrant in an involuntary manslaughter investigation held inadmissible).

In an apparent response to *Hitchens,* the legislature passed Iowa Code section 321B.14. Notwithstanding a driver's earlier refusal, the driver may be compelled under this statute to submit to withdrawal of a specimen for chemical testing pursuant to a search warrant issued as part of an involuntary manslaughter investigation. Iowa Code §§ 321B.14(1) and (5).[5]

Owens seems to argue the legislature intended to preserve the driver's right to refuse under section 321B.14(1) and intended the penalties in section 321B.14(5) as trade-offs for the refusal. Thus, according to Owens, if the driver does refuse, the police are left with only one recourse: they must resort to the penalties and may not use any force.

Contrary to Owens' interpretation of section 321B.14, we think, for several reasons, that the legislature intended to permit the use of force under our implied consent law in a case such as this one.

First, section 321B.14(5) deems "[t]he act of any person knowingly resisting or obstructing the withdrawal of a specimen pursuant to a search warrant" issued under the statute a contempt punishable by fine, imprisonment, or both. In addition, the driver incurs two other penalties: his driver's license is revoked and proof of his refusal is admissible as evidence. Iowa Code § 321B.14(5). By using the words "knowingly resisting or obstructing," the legislature contemplated that the police would use some force to obtain the specimen because there could be no resistance or obstruction unless force were being used. The permissible use of force to execute a search warrant is by no means a novel concept in the law. *See, e.g., State v. Iverson,* 272 N.W.2d 1, 4 n. 1 (Iowa 1978); Iowa Code § 808.6.

Second, if the legislature intended the result suggested by Owens, we think it could easily have said so, as it did in section 321B.13. Section 321B.13 leaves no doubt

---

**4.** Again responding to questions from the prosecutor, the attorney testified:

Q. Were you familiar with the laws yourself before going to the hospital that night?
A. Yes. I reviewed the relevant Code sections in anticipation of any problems because I knew on the phone—Mr. Owens had told me at ten o'clock they were going to take a sample of his blood if an attorney didn't show up.
Q. So then you are aware that in withdrawing a sample under the provisions of a search warrant that the police would be empowered to use force if necessary?

. . . .

A. In reading the Code and also in recollecting U.S. Supreme Court cases relevant to this issue, it is my understanding that the police could involuntarily, against the accused's will, take a sample, a bodily sample. My recollection of Supreme Court cases is that they can do that. To what extent the force is used, I don't know. I guess it's a case-by-case basis.

**5.** Section 321B.14(1) provides:
Refusal to consent to a test under section 321B.4 does not prohibit the withdrawal of a specimen for chemical testing pursuant to a

search warrant issued in the investigation of a suspected violation of section 707.5 [involuntary manslaughter] where the following grounds exist:
a. A traffic accident has resulted in a death or personal injury reasonably likely to cause death, and
b. There are reasonable grounds to believe that one or more of the persons whose driving may have been the proximate cause of the accident was violating section 321.281 at the time of the accident.
Section 321B.14(5) provides:
The act of any person knowingly resisting or obstructing the withdrawal of a specimen pursuant to a search warrant issued under this section constitutes a contempt punishable by a fine not exceeding one thousand dollars or imprisonment in a county jail not exceeding one year or by both such fine and imprisonment. Also, if the withdrawal of a specimen is so resisted or obstructed, sections 321B.13 [revocation of driver's license] and 321B.29 [proof of refusal admissible] apply.

that the police must respect a driver's refusal when no fatality is involved and can only resort to revocation: "If a person refuses to submit to chemical testing, a test shall not be given, but the department ... shall revoke the person's license ... to drive...." Iowa Code § 321B.13. When, however, a fatality is involved in a potential OWI situation, we think the legislature believed it should authorize force and impose stringent penalties in addition because it considered the chemical test crucial evidence in such a case.

Finally, section 321B.14 seeks to accomplish an important objective: to secure and preserve crucial evidence in a fatal accident having serious criminal implications. The evidence could establish not only guilt but also innocence. A permitted refusal under this section would obviously defeat this important and laudable objective. By interpreting section 321B.14 to permit the police to use force in executing the warrant, we allow the statute to operate in a practical and sensible manner. *See* Iowa Code §§ 4.2; 4.4(3), (4); 4.6(1), (5).

Because we think the officers' authority to use force under section 321B.14 equates with their authority under the due process clause, we hold that no violation of substantive statutory rights occurred here either.

III. *Disposition.*

Because we find that the police officers in this case had reasonable grounds to request blood-alcohol tests from Owens and did not violate his statutory or due process rights in doing so, we affirm the district court's refusal to suppress the urine test results. Accordingly, we allow Owens' OWI and involuntary manslaughter convictions to stand.

AFFIRMED.

All Justices concur except SCHULTZ, J., who concurs in result only.