STATE of Iowa, Appellee,

v.

Michael Lee DULANEY, Appellant.

No. 91–826.

Supreme Court of Iowa.

Dec. 23, 1992.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Gerald N.

Partridge, County Atty., and Barbara Edmondson, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant Michael Dulaney appeals from his conviction of three counts of vehicular homicide. Dulaney contends the trial court erred in admitting his blood alcohol level test results. We affirm Dulaney's convictions.

I. *Background facts and proceedings.* On the evening of July 13, 1990, Dulaney ate dinner at a fast-food restaurant and then drove to a tavern in Cedar Rapids. He was allegedly at the tavern from approximately 10:00 p.m. until 12:00 a.m. Dulaney testified he stopped drinking alcoholic beverages at 11:30 p.m.

Dulaney left the bar at midnight and began driving to a place where he planned to spend the night sleeping in his truck.

At approximately 12:50 a.m. Dulaney, driving a Ford Bronco, apparently crossed the center line on highway 218 in Washington county and collided with a Plymouth auto, killing all three of its passengers.

Dulaney was transported to University Hospitals in Iowa City for treatment of his injuries. Part of his treatment included the insertion of a tube down his throat and into his stomach, and the insertion of a catheter into his bladder. The emergency room physicians also withdrew a blood sample from Dulaney for alcohol testing as a routine part of treatment.

Meanwhile, Iowa State Trooper Gary Bird was directed by officers investigating the collision to go to University Hospitals to obtain a blood sample from Dulaney for testing of alcohol. Upon arrival at the hospital, Bird read the implied consent advisory to Dulaney and asked him to submit to a blood test pursuant to Iowa Code section 321J.6(1)(b) (1989), Iowa's implied consent law. That statute authorizes a request for withdrawal of body substances.

At first, Dulaney did not respond to Bird's request. Dulaney then requested to speak with an attorney, but Bird advised him that was unnecessary as he was not yet under arrest for anything. Dulaney refused to respond further, and Bird allowed the hospital staff to continue treating Dulaney's injuries.

Later, Bird again asked Dulaney to submit to a blood test, and again Dulaney refused to answer. Bird then told Dulaney that if he did not respond, Bird would infer that to be a complete refusal and would get a search warrant to obtain a blood sample under Iowa Code section 321J.10. Dulaney allegedly replied, "Get your search warrant."

After Dulaney's refusal to submit to a blood test, Bird did not offer Dulaney a breath or a urine test.

Bird then proceeded to obtain a search warrant as provided in section 321J.10. Bird had the warrant executed at 3:54 a.m. and a blood sample was withdrawn from Dulaney by hospital personnel.

Dulaney's blood was tested by the Iowa Department of Criminal Investigation (DCI) crime laboratory. The test results showed Dulaney had a blood alcohol level of .018 grams of alcohol per 100 milliliters of blood. On the DCI lab report of August 6, 1990, was typed a notation that the sample would be destroyed within 120 days unless the defendant requested it be preserved. Since defendant did not request preservation of the sample within this 120 day period, the sample was destroyed pursuant to regular DCI lab practice.

A trial information was filed against Dulaney on December 3 charging him with three counts of vehicular homicide in violation of Iowa Code section 707.6A(1)(a). The blood sample was scheduled to be destroyed one day later, on December 4. Dulaney did not request the sample be retested until December 10, after it was already destroyed.

Because Dulaney was unable to have the sample independently tested, he moved to suppress the blood alcohol level test results. After evidentiary hearing, the motion was overruled.

Dulaney also brought out at trial the results of a blood plasma sample withdrawn from him by the emergency room physicians at 2:00 a.m. the night of the accident. That sample produced a result consistent with the blood alcohol level shown in the 3:54 a.m. blood test.

The jury ultimately found Dulaney guilty on all three counts of vehicular homicide and the court imposed sentence on defendant.

Dulaney now appeals, claiming the district court erred in admitting the blood test results obtained by the DCI lab. Dulaney claims these results should not have been admitted: 1) because the State violated the implied consent law by failing to offer him an alternative test after offering him a blood test and prior to obtaining a search warrant under Iowa Code section 321J.10; and 2) because the State destroyed the blood sample before Dulaney was able to have the sample independently tested, thus violating both his due process rights and Iowa law.

■ II. *Compliance with the implied consent law.* Dulaney contends that the district court should have suppressed the blood test results because Trooper Bird did not properly follow the procedures outlined under Iowa Code section 321J.6(2). Specifically, Dulaney alleges that Bird failed to offer him a breath or a urine test after he refused a blood test, as required by the statute.

Our review here is for correction of errors at law. *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988).

Bird testified that he twice requested Dulaney to give a blood sample, but Dulaney refused to respond. When Dulaney refused to respond the second time, Bird advised him that his refusal to respond would be taken as a complete refusal to testing, and Bird would secure a search warrant under section 321J.10 to forcibly obtain a blood sample. Dulaney replied, "Get your search warrant." Bird then obtained the search warrant without further offering Dulaney a breath or a urine test.

Dulaney cites *State v. Jensen*, 216 N.W.2d 369 (Iowa 1974), for the proposition that an officer's failure to offer alternative tests is a basis for suppression of blood test results. More recently, however, *State v. Owens*, 418 N.W.2d 340 (Iowa 1988), implied that failure to offer alternative tests is *not* a basis for suppression of test results because an officer can force a blood test on the defendant by getting a search warrant pursuant to section 321J.10.

Other Iowa cases say the reasons for following the procedures in the implied consent law are to insure the reliability and accuracy of the test results, to protect the defendant's health, and to offer the defendant an alternative test if the defendant has religious objections to a blood test. *E.g., State v. Kelly*, 430 N.W.2d 427, 429 (Iowa 1988); *State v. Steadman*, 350 N.W.2d 172, 174 (Iowa 1984); *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981); *Rodriguez v. Fulton*, 190 N.W.2d 417, 419 (Iowa 1971).

Here, Dulaney has raised no religious qualms regarding a blood test nor has he asserted a blood test would have endangered his health. He also did not challenge the *accuracy* of the DCI lab test result.

Dulaney also does not contend that Bird should have offered him an alternative test pursuant to section 321J.10(4) after the search warrant was issued and was about to be executed.

In any event, Dulaney impliedly refused any testing. We have previously held that a total failure to cooperate in chemical testing is "tantamount to a declination." *Buda v. Fulton*, 261 Iowa 981, 991, 157 N.W.2d 336, 342 (1968). We conclude, as did the trial court, that under the circumstances, Dulaney's statement to "[g]et your search warrant" amounted to a complete refusal to cooperate. Therefore, Bird properly got a search warrant pursuant to section 321J.10.

■ Finally, Dulaney's treating physicians testified that Dulaney had a tube inserted down his throat and a catheter inserted into his bladder while in the emergency room. These circumstances would have made it almost impossible for Bird to

obtain either a breath or a urine sample. The useless act of offering a breath or a urine test to Dulaney under these circumstances where he almost certainly would be unable to comply would serve no meaningful purpose. *See State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991).

Thus, we conclude the blood test results were properly admitted and the motion to suppress properly overruled as to this assignment of error. *See* Iowa Code § 321J.15 ("[u]pon the trial of a ... criminal action ... evidence of the alcohol concentration ... is admissible").

■ III. *Destruction of blood sample as violating due process rights.* Dulaney next contends the State violated his due process rights under United States Constitution amendment XIV and Iowa Constitution article I section 9 by destroying his blood sample before he was able to have it independently tested. Thus, he asserts the trial court should have suppressed the blood test results.

Our standard of review on this issue is de novo because of the constitutional challenge. *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

Defendant relies on *State v. Brown*, 337 N.W.2d 507 (Iowa 1983), an involuntary manslaughter case where we affirmed suppression of the defendant's blood alcohol tests. In *Brown*, a police officer requested the defendant to give a blood sample, even though the officer did not believe the defendant was under the influence and did not have good cause to arrest him for OM-VUI. *Id.* at 508. Additionally, the officer told the medical technologist who drew the blood and performed the test that the sample was a "medical" and not a "legal" sample. *Id.* A week later, the hospital routinely destroyed the part of the sample not used in the test.

Brown later moved to have the blood sample retested. Upon discovering the sample had been destroyed, Brown successfully moved to suppress the test results on due process grounds. *Id.*

In affirming the trial court's suppression of Brown's test results, we relied on *Brady*

*v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We said the three requirements under *Brady* to show a due process violation resulting from state suppression of evidence are:

1. a proper defense request for the evidence,

2. a showing that the evidence would be favorable to the defendant, and

3. a showing the evidence was material. *Brown*, 337 N.W.2d at 509. We noted that under *Brady*, the State's good or bad faith is irrelevant. *Id.*

We found Brown had fulfilled all three *Brady* requirements. We pointed out especially that Brown had no effective way to verify or challenge the test accuracy, and that the test was particularly material to Brown's conviction as it was the only direct evidence against him. *Id.* at 510–11.

We believe Dulaney's reliance on *Brown* is misplaced in light of subsequent Supreme Court case law and subsequent Iowa case law.

*A. Subsequent Supreme Court case law.* Since 1983, the Supreme Court has further addressed issues of the State's duty to preserve evidence. In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), a drunk driving case, police officers failed to preserve the defendants' breath samples. In affirming the trial court's admission of the breath test results, the Court noted the evidence presented at trial was not the breath sample itself, but rather the test results obtained from the sample. *Id.* at 488, 104 S.Ct. at 2533, 81 L.Ed.2d at 421.

The Court focused on the State's intent, stating that the State there did not destroy the samples "in a calculated effort to circumvent the disclosure requirements established by *Brady*...." *Id.* at 488, 104 S.Ct. at 2533, 81 L.Ed.2d at 422. The Court also pointed out the officers were acting in good faith and following normal practice in destroying the samples, and the record contained no allegations of "official animus towards respondents or of a conscious effort to suppress exculpatory evidence." *Id.* at 488, 104 S.Ct. at 2533, 81 L.Ed.2d at 422.

The Court then set out the standard for the State's duty to preserve evidence:

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a *significant* role in the suspect's defense. To meet this standard of constitutional materiality ... evidence must both possess an *exculpatory* value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* at 488–89, 104 S.Ct. at 2534, 81 L.Ed.2d at 422 (emphasis added). The Court held defendants' due process rights were not violated because the chances were extremely low that the samples would have been exculpatory, and the defendants had alternative means of demonstrating their innocence. *Id.* at 489–90, 104 S.Ct. at 2534–35, 81 L.Ed.2d at 422–23.

In *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), police officers failed to properly preserve semen stains on a minor rape victim's clothing, thus preventing either the prosecution or the defense from conducting conclusive deoxyribonucleic acid (DNA) identification tests. The defendant claimed his due process rights had been violated because the State had failed to preserve evidence which might have exonerated him.

The Court acknowledged *Brady,* stating that the State's good or bad faith is irrelevant when the State fails to disclose to a defendant *"material exculpatory* evidence." *Id.* at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289 (emphasis added). However, the Court went on to say that the due process clause

requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it *could have been* subjected to tests, the results of which *might* have exonerated the defendant.

*Id.* at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289 (emphasis added). In those cases, the Court stated, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289.

In the present case, there is no evidence the State intentionally destroyed the sample in an effort to deprive Dulaney of evidence, as required by *Trombetta* and *Youngblood.* The DCI lab simply destroyed the sample pursuant to its usual procedure after waiting approximately four months for the defendant to request preservation of the sample.

There is no evidence that Dulaney's blood sample was exculpatory in any way. In fact, Dulaney introduced at trial a blood plasma test taken at 2:00 a.m. by the emergency room physicians the morning of the accident. That blood plasma test showed a concentration of alcohol consistent with the blood sample taken pursuant to Bird's search warrant at 3:54 a.m. After introducing the plasma test result, Dulaney certainly cannot validly claim the State's blood sample could have been exculpatory.

Furthermore, Dulaney had access to other evidence comparable to the State's sample. As mentioned above, the hospital took a blood plasma sample to test for alcohol. Dulaney had access to this sample, and in fact did introduce those results at trial. Therefore, the State's sample was not "of such a nature that [Dulaney] would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

We conclude that the State's blood sample merely could have been subjected to tests, and the results merely might have exonerated Dulaney. This is not enough under *Trombetta* and *Youngblood* to find a violation of Dulaney's due process rights.

*B. Subsequent Iowa case law.* Dulaney's reliance on *Brown* is further misplaced in light of subsequent Iowa case law.

In *State v. Hulbert,* 481 N.W.2d 329 (Iowa 1992), the defendant requested a spoliation instruction because a sheriff's depu-

ty, while trying to duplicate the tape for the defendant, accidentally erased a videotaped interview between the victim and an investigator. In affirming the trial court's refusal to give the instruction, we cited *Brown* and listed the three *Brady* requirements for proving a due process violation based on destruction of evidence by the State. *Id.* at 334. However, we specifically pointed out "the further rule that the spoliation inference is inappropriate unless the destruction is intentional." *Id.* (citing *State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979)). We then favorably cited *Arizona v. Youngblood* and quoted the Supreme Court's language requiring a showing of bad faith on the part of police when they fail to preserve merely potentially useful evidence. *Hulbert,* 481 N.W.2d at 334.

In explaining the requirements of *Arizona v. Youngblood,* we recently stated in *State v. Craig,* 490 N.W.2d 795, 796–97 (Iowa 1992) that "[w]here the lost evidence is only *potentially* exculpatory, where by its nature the lost evidence cannot be evaluated by a fact finder, a due process violation will not be found in the absence of a showing of bad faith." (Emphasis in original.)

Dulaney's reliance on *Brown* is misplaced because we have already acknowledged and utilized the Supreme Court's further refined standards as set out in such cases as *Arizona v. Youngblood.*

Also, we have previously held *Brown* does not apply to implied consent cases. *See State v. Steadman,* 350 N.W.2d 172, 175 (Iowa 1984). Dulaney's case, in contrast, *is* an implied consent case. Trooper Bird properly followed the procedures outlined in chapter 321J and finally resorted to securing a search warrant under section 321J.10 to obtain the blood specimen. Because Bird operated within the implied consent statute, *Brown* does not apply here.

Finally, *Steadman* itself is an Iowa case precisely on point. In *Steadman,* the defendant was involved in an auto accident which killed a pedestrian. After poorly performing field sobriety tests, defendant was arrested for OWI and taken to jail. *Steadman,* 350 N.W.2d at 173. At the jail, the officer invoked implied consent procedures and administered a breath test. The defendant later moved to suppress the breath test results because the sample was not preserved, thus preventing defendant from obtaining independent testing. *Id.*

We cited Iowa Code section 321B.28 (now 321J.11), which specifically allows for the admission of chemical test results *even when* the defendant fails or is unable to obtain independent testing of the samples. *Id.* at 173. *See also* Iowa Code § 321J.11. After discussing *Brown* and its meaning we held:

> the due process clauses of the state and federal constitutions do not require suppression of blood alcohol test results obtained through chapter 321B implied consent procedures for failure of a peace officer to preserve a sample of the specimen tested when the defendant did not notify the officer of a desire for an independent test.

*Id.* at 175.

Clearly, under *Craig, Hulbert* and *Steadman,* Dulaney's due process rights were not violated and the blood sample was not illegally destroyed.

■ IV. *Alleged violation of Iowa law.* Finally, Dulaney contends the State destroyed his blood sample in violation of Iowa law. He asserts the sample was destroyed in violation of Iowa Code section 808.9 and Iowa Code chapter 809, and in violation of DCI lab regulations. We disagree.

Our standard of review here is for correction of errors at law. *Owens,* 418 N.W.2d at 342.

Bird obtained Dulaney's blood sample the night of the accident pursuant to Iowa Code section 321J.10. This section allows an officer to secure a search warrant to obtain a defendant's blood sample. After obtaining Dulaney's sample, Bird sent the sample to the DCI lab for testing. The DCI lab destroyed the sample within 120 days after testing it, pursuant to their usual practice.

Dulaney contends that section 808.9 and chapter 809 apply to this blood sample. Section 808.9 provides that

[p]roperty of an evidentiary nature seized in the execution of a search warrant shall be safely kept ... so long as reasonably necessary to enable its production at trials. The disposition of such property shall be in accordance with chapter 809.

Chapter 809 provides for the disposition of seizable and forfeitable property. Dulaney believes that his blood sample was of an evidentiary nature, and thus should have been preserved under these Code provisions for production at his trial. This conclusion is flawed for at least two reasons.

First, section 321J.10(7) specifically states that "[s]pecimens obtained pursuant to warrants issued under this section *are not subject* to disposition under section 808.9 or chapter 809" (emphasis added). Bird obtained the search warrant pursuant to section 321J.10, not chapter 808. Consequently, under the explicit language of section 321J.10(7), section 808.9 and chapter 809 *do not apply*, and the State was not required to preserve the sample for production at trial under those statutes.

 Furthermore, we have held unintentional destruction of evidence pursuant to usual practice does not violate a defendant's due process rights. *State v. Langlet,* 283 N.W.2d 330 (Iowa 1979). In *Langlet,* an OMVUI defendant telephoned his lawyer and received a call from his wife while in a city jail. The defendant knew that both calls were being recorded.

Defendant later filed a request for production of documents, including the recordings of the phone calls. The State then discovered that the tapes had been erased pursuant to the city's policy of erasing all tapes after thirty days. *Id.* at 332.

We held in *Langlet* that because the destruction of the tapes was done unintentionally and merely pursuant to a usual practice or policy, the defendant's due process rights were not violated. *Id.* at 333–36.

Here, the State did not intentionally destroy the sample to withhold evidence from Dulaney. The DCI lab disposed of the blood sample pursuant to its usual practice. Therefore, we conclude the State did not destroy the sample in violation of any Iowa law.

V. *Disposition.* In sum, we conclude the State properly followed Iowa's implied consent law in obtaining Dulaney's blood sample, and that the destruction of the blood sample did not violate Dulaney's due process rights or Iowa law. We therefore affirm Dulaney's convictions for vehicular homicide.

AFFIRMED.