# IN THE COURT OF APPEALS OF IOWA

No. 24-1785
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM BRET MOOTHART,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Michael Jacobsen, Judge.

        A defendant appeals his conviction for operating while intoxicated. **AFFIRMED.**

        Trevor A. Jordison (argued) and Billy J. Mallory of Mallory Law, Urbandale, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, and Samantha Stewart (argued), certified law student intern, for appellee.

        Heard at oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**LANGHOLZ, Judge.**

Officers suspected a motorcycle driver—William Moothart—was driving drunk after arriving at the scene of a crash and observing signs of impairment. To confirm their belief, officers opted to forgo implied-consent procedures and instead obtain a warrant to collect a blood sample. That blood sample showed Moothart had a blood alcohol concentration over twice the legal limit. So the State charged him with operating while intoxicated. While the charges were pending, Moothart requested general discovery of exculpatory material but never asked for independent testing of his blood sample. And on the second day of trial, after learning the sample had been destroyed, he moved to exclude his blood-test results, arguing the State deprived him of due process by destroying the sample contrary to Iowa Code chapters 808 and 809 (2023). The district court disagreed, the jury found him guilty, and Moothart now appeals.

Due process does not referee strict compliance with state law—it safeguards Moothart's access to constitutionally material evidence. Because Moothart has not shown his blood sample had exculpatory value at the time it was destroyed or that the State intentionally destroyed the sample in bad faith, admitting testimony about his blood-test results did not deprive him of due process. As for his other issues, the State's late production of a chain-of-custody document was not prejudicial, and so we deny his request for a new trial. And substantial evidence supports the jury's findings that Moothart indeed operated the motorcycle that evening and did so while under the influence of alcohol. We thus affirm Moothart's conviction.

## I. Factual Background and Proceedings

Just after midnight on June 7, 2023, a Waukee police officer responded to an automated iPhone crash notification. When he arrived on the scene, the officer saw a motorcycle lying on its side in a grassy ditch next to the road. And only one person was present—Moothart. The officer approached Moothart to see if he was all right and noticed Moothart was slow to respond to his questions.

A few minutes later, a second officer arrived on the scene. The second officer quickly observed signs of impairment, noting Moothart had bloodshot eyes, impaired balance, slurred speech, and smelled of alcohol. The officer asked Moothart to perform field sobriety tests, but Moothart declined. So too did he decline a preliminary breath test. Bodycam video captured part of the encounter, showing Moothart's significantly delayed responses to the officers' questions.

The second officer decided to seek a blood sample to confirm Moothart's impairment, so he applied for a search warrant and transported Moothart to the station. After the warrant was approved, an employee from the county medical examiner's office drew Moothart's blood. And lab testing by the Iowa Division of Criminal Investigation ("DCI") confirmed Moothart's blood alcohol concentration was 0.194—over twice the legal limit.

The State charged Moothart with operating while intoxicated, first offense. Early in the case, Moothart moved for discovery, specifically requesting the State produce "[a]ny evidence which is or may be exculpatory or favorable on the issues of Defendant's guilt or punishment." In September 2023, the court granted Moothart's discovery motion, but only "to the extent set out in Iowa Rule of Criminal Procedure 2.14." By this time, the State had already produced the DCI lab report,

which showed Moothart's 0.194 blood alcohol result and included a notice that the sample would be "retained in the laboratory until all analyses have been completed." Moothart never requested independent testing of the blood sample or inquired about its preservation.

Nearly a year later, the case went to trial. On the morning of the first day of trial, the State produced a DCI chain-of-custody document relating to Moothart's blood sample.[1] That document showed the lab's recorded interactions with the sample, culminating in destroying the sample on February 1, 2024. Moothart did not alert the court to any issues with the timing of the document's disclosure or its contents that day.

Yet on the morning of the second day, Moothart moved to prevent the State's witness from testifying about the lab test results. His rationale was three-fold. First, he believed that because the State never electronically filed the lab report as a proposed exhibit, any testimony about the report's findings would be hearsay. Second, he argued that testimony about the results would violate the best-evidence rule. And third, he argued that admitting the results deprived him of due process because the chain-of-custody document showed the State destroyed the blood sample before trial, contrary to Iowa Code chapters 808 and 809. On this point, Moothart argued that because the State destroyed the sample, he was "not able to test it." Alternatively, if the test results did come into evidence, Moothart requested a spoliation instruction because the sample was destroyed after the court ordered the State to engage in discovery.

---

[1] The State only learned of the document the weekend before trial, and the prosecutor emailed it to Moothart's counsel first thing on Monday.

The court disagreed on all fronts. First, the court held that failing to file the report ahead of time was not grounds for excluding testimony, particularly given that the State never intended to offer the report as an exhibit. Second, the court saw no basis to give a spoliation instruction, as Moothart never asked for the sample before trial or requested independent testing. And third, the court ruled that there was no due-process violation. So the lab employee testified at trial, and the jury learned that Moothart's blood alcohol concentration was 0.194.

The jury ultimately found Moothart guilty. Moothart then moved for a new trial, again arguing that the State was statutorily required to retain the blood sample and that its destruction deprived him of due process. And he also argued that the State's eleventh-hour disclosure of the DCI chain-of-custody document impaired his ability to mount a defense. The court denied the motion and sentenced Moothart to seven days in jail. Moothart now appeals.

## II.     Due Process

Moothart first asserts that the district court erred by admitting testimony relating to the blood sample results. At trial, Moothart's objection to the test-result evidence was limited to three grounds: hearsay, best evidence, and due process. We thus cabin our review to the only preserved ground renewed on appeal: due process.[2] And while we generally review evidentiary rulings for abuse of discretion,

---

[2] Moothart's appellate brief lists hearsay in his statement of the issues presented for review. *See* Iowa R. App. P. 6.903(2)(a)(3). But his brief never makes any hearsay argument in the argument section of the brief. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). To the extent he wished to appeal a hearsay objection, his failure to offer any factual or legal support waives the issue. *See id.*

because Moothart makes a constitutional argument, our review is de novo. *State v. Boehmer*, 967 N.W.2d 191, 193 (Iowa Ct. App. 2021).

Moothart chiefly argues that because officers bypassed the implied-consent procedures of chapter 321J and instead obtained a search warrant under chapter 808, the State had a duty to preserve the seized blood sample until trial, which it failed to do. *See generally* Iowa Code § 808.9 ("Property of an evidentiary nature seized in the execution of a search warrant shall be safely kept, subject to the orders of any court having jurisdiction to try any offense involved therewith, so long as reasonably necessary to enable its production at trials. The disposition of such property shall be in accordance with chapter 809."); *State v. Laub*, 2 N.W.3d 821, 828–32 (Iowa 2024) (confirming implied-consent procedures are not the exclusive method of seeking chemical testing).

But as Moothart acknowledges, that failure alone does not establish a due-process violation entitling him to relief.[3] "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). To be constitutionally material, the evidence must "possess an exculpatory value that was apparent before the evidence was

---

[3] Moothart does not specify whether he alleges a due-process deprivation under the Iowa Constitution, the United States Constitution, or both. His lone citation in support of this issue is to *State v. Dulaney*, 493 N.W.2d 787 (Iowa 1992), which followed federal precedent when assessing a similar evidence-destruction issue under both the state and federal constitutions. Consistent with that approach, we similarly apply federal precedent. And we remind litigants that if they wish to "raise a state constitutional issue independent of a federal constitutional issue," they "should make a separate argument supported by citation to authority to avoid waiving the issue." Iowa R. App. P. 6.903(2)(a)(8)(3) cmt.

destroyed." *Id.* at 489. And when "no more can be said" of the evidence's exculpatory value "than that it *could* have been subjected to tests, the results of which *might* have exonerated the defendant," then a defendant must show the State intentionally destroyed the evidence in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (emphasis added).

Moothart has not shown his blood sample was constitutionally material. Moothart received the lab report early in the case, confirming his blood alcohol concentration was over twice the legal limit. And he never requested independent testing. So no exculpatory value was apparent at the time of destruction. *See Trombetta*, 467 U.S. at 489 (finding "the chances [were] extremely low" that had breath samples been preserved they would have been exculpatory, as once the test "indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence"). At most, Moothart speculates the blood sample was "potentially exculpatory." But without proof of bad faith, the mere possibility that testing could have been favorable is not enough. *Youngblood*, 488 U.S. at 57; *see also State v. Waters*, 515 N.W.2d 562, 568 (Iowa Ct. App. 1994); *State v. Craig*, 490 N.W.2d 795, 796–97 (Iowa 1992).

And Moothart has not shown the State intentionally destroyed the sample in bad faith. The district court found that the sample was destroyed in accordance with the DCI lab's normal policies. *See State v. Dulaney*, 493 N.W.2d 787, 791 (Iowa 1992) (finding State did not destroy the evidence in an effort to thwart the defendant when it followed "its usual procedure"). Moothart urges that because he requested production of "[a]ny evidence which is or may be exculpatory," the State owed a specific duty to produce the sample and so its destruction is per se

bad faith. But again, nothing indicated the sample could be exculpatory—testing had shown the sample to be inculpatory and Moothart never requested independent testing during the year leading up to trial. *See also Illinois v. Fisher*, 540 U.S. 544, 549 (2004) (rejecting a "per se rule" that presumes bad faith if evidence is destroyed during a pending discovery request). So we see no basis to conclude the State flouted a discovery order or destroyed the sample to thwart Moothart's ability to retest the sample.

Moothart relies heavily on *Dulaney*, but the case cuts against him. There, a drunk driver veered into oncoming traffic, killing three people. 493 N.W.2d at 788. Officers collected a blood sample under section 321J.10, which was then destroyed in accordance with the DCI lab's normal retention practices. *Id.* The driver asked for the sample to be retested a few days later. *Id.* And after learning of the destruction, the driver argued that introducing evidence relating to the sample's test results deprived him of due process. *Id.* Our supreme court disagreed. Relying on *Trombetta* and *Youngblood*, the court found the sample was only potentially useful and had not been "intentionally destroyed" to "deprive [the driver] of evidence." *Id.* at 791. To be sure, in rejecting the driver's statutory argument based on chapters 808 and 809, the court reasoned in part that the driver's blood was collected under implied-consent procedures rather than a chapter 808 search warrant. *Id.* at 793. But it also offered a second reason that his statutory argument failed—"the State did not intentionally destroy the sample to withhold evidence from" him but rather "[t]he DCI lab disposed of the blood sample pursuant to its usual practice" and thus "did not destroy the sample in violation of any Iowa law." *Id.* at 793.

So too here. Moothart waited over a year—and halfway through his trial—to suggest the possibility of new testing. Because the blood sample was not exculpatory, nor has he shown the State intentionally destroyed it in bad faith, we affirm the district court's ruling.

### III. Chain-of-Custody Document

Moothart next argues that by not disclosing the DCI lab's chain-of-custody record until the morning of trial, the State deprived him of a defense and he is thus entitled to a new trial. The district court denied his posttrial motion for a new trial on this basis, and we review for abuse of discretion. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).[4]

Moothart has not shown he was prejudiced by the delay in the State's production of the chain-of-custody document. *See State v. Ramirez*, 895 N.W.2d 884, 891 (Iowa 2017) (affirming denial of new trial when undisclosed portion of audiotape did not prejudice the defendant). Moothart received the document the day before any DCI lab employees testified and thus could have used the document to cross-examine the employees about possible breaks in the DCI lab's chain of custody—he chose not to. Instead, Moothart's counsel limited his cross-examination to raising possible custodial issues *before* the DCI lab obtained the sample, which is unrelated to the produced document. The State's late production

---

[4] The State contests error preservation because Moothart did not cross-examine a DCI lab employee about the document. But the State does not support its argument with any authority. So rather than deciding whether such cross-examination—or some other motion or objection before raising the issue in a posttrial motion for a new trial—is required to preserve error without any meaningful briefing, we assume that error was preserved by Moothart's motion for a new trial and the district court's ruling on it.

thus did not impede Moothart's ability to mount a defense or question witnesses about the sample's chain of custody. And so, we find no abuse of discretion.

### IV. Sufficiency of the Evidence

Finally, Moothart disputes that sufficient evidence supports his conviction. We review his claim for substantial evidence, upholding the conviction if the evidence "would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Warren*, 955 N.W.2d 848, 856 (Iowa 2021). Across our review, "[w]e view the evidence in the light most favorable to the verdict, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record." *Id.* (cleaned up).

To convict Moothart of operating while intoxicated, the jury needed to prove—as it was instructed—that (1) "Moothart operated a motor vehicle," and (2) he did so while being "under the influence of alcohol," having "an alcohol concentration of .08 or more," or having "any amount of a controlled substance present." *See* Iowa Code § 321J.2; *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) (noting unopposed jury instructions become the law of the case). Moothart argues the State failed to prove he operated the motorcycle or that he did so while under the influence of alcohol. We disagree.

First, substantial evidence shows Moothart operated the motorcycle. The motorcycle was registered to him, no other person was on the scene, he told officers that he was coming from a friend's house, and he never suggested that any other person operated his motorcycle that night. And second, substantial evidence supports the jury's finding that he drove his motorcycle while impaired by alcohol. When officers arrived, there was still debris from the crash in Moothart's

hair and collar—indicating the crash had happened shortly before officers arrived. He exhibited visual signs of impairment, including slurred speech, bloodshot eyes, and delayed responses.  And beyond those physical signs, his blood sample— obtained several hours after the crash—showed a blood alcohol concentration of 0.194.  Thus, substantial evidence supports Moothart's conviction.

**AFFIRMED.**