_____

No. 96-2312
_____

William Beeman,                         *
                                        *
     Petitioner - Appellant,            *
                                        *  Appeal from the United States
     v.                                 *  District Court for the
                                        *  Southern District of Iowa.
State of Iowa,                          *
                                        *
     Respondent - Appellee.             *


_____

          Submitted:  December 10, 1996

             Filed:  March 6, 1997
_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     William Beeman appeals from the district court's[1] denial of his
petition for writ of habeas corpus.  Beeman sought relief from his 1980
conviction for first-degree murder in connection with the killing of
Michiel Winkel.  He makes three claims of ineffective assistance of
counsel.  We affirm the judgment of the district court.

     The body of Michiel Winkel was found at Wild Cat Den State Park in
Muscatine County, Iowa on April 26, 1980.  Winkel had been

_____

     [1]The Honorable Charles R. Wolle, Chief Judge, United States
District Court for the Southern District of Iowa.

kicked in the head and stabbed to death. Her body was unclothed, and Winkel had been subjected to sexual intercourse either shortly before or shortly after her death. The medical evidence indicated the date of the murder was most likely between April 17 and April 24, 1980.

As part of their investigation, police interviewed people known to have been in the area from which Winkel disappeared. Police noticed a discrepancy in the statement of Beeman and that of his girlfriend, and called Beeman in for a second interview. In that interview Beeman said the policeman told him "that manslaughter was just spur of the moment, reflex-type thing and manslaughter--or first degree was thought out over a period of time and everything." Beeman said the policeman "was acting like--well, he said that if it was manslaughter, he was going--they could try to help me; and they would help me all they could." Beeman then admitted that he was with Michiel Winkel on the evening of April 21, 1980. He ultimately signed a confession saying that he had taken Michiel Winkel to Wild Cat Den State Park that night. He said that after the two had been necking and Winkel had removed her clothes, she refused to have sex with him and kicked him in the groin. The statement said:

> [A]s a reflex I kicked her in the head above the right eye, I was wearing my steel toed boots. She fell to the ground and I remember her trying to get up, and I don't remember what happened next. . . . I don't remember if I had sex with her or not. I had my knife with me but I don't remember stabbing her.

Beeman's counsel filed a belated motion to suppress the confession on the ground that the police had coerced Beeman by leading him to believe they would help him if he confessed. The trial court overruled the motion on the merits and because it was

untimely.  Beeman's trial counsel later testified that the reason he did not move to suppress the confession earlier was that:

> There was discussion of the defense being diminished capacity on the part of Mr. Beeman.  Mr. Beeman's information to me all the way along until we got into September--this whole thing was like a dream, and he couldn't really remember what happened or what didn't happen.  As the evidence started coming out in a certain manner and started to appear as if the diminished capacity defense was not really viable, Mr. Beeman started to indicate that he recalled more about the statement.

Beeman's case was tried to a jury.  One of the trial exhibits was Michiel Winkel's purse.  During deliberations, the jury sent a note to the court asking if it was permissible to consider a deposit slip and bank book the jurors had found inside the purse.  The slip and book memorialize a deposit dated April 22, 1980 at 2:51 p.m. The April 22 date is significant not just because Beeman's confession fixed the date of the murder at April 21, but also because Beeman had broken his foot the morning of April 22 and could not have committed the murder after that.

The trial court called counsel in and asked what to do about the jury's note.  Counsel for the State asked to reopen the case to put on evidence explaining that the bank documents were post-dated because it was an afternoon transaction on April 21. In the alternative, the State requested a mistrial, which Beeman's counsel opposed.  The court ultimately decided to instruct the jury to disregard the bank slip and passbook.  The jury found Beeman guilty of first degree murder.

After the verdict, a man named Leslie Brown, who had once been a suspect in the case, contacted the police and stated that he had spoken to Michiel Winkel after April 21, 1980.  Beeman's counsel

thereupon moved for a new trial, calling Leslie Brown as a witness. At the new trial hearing Brown first said that he had seen Winkel on April 22, 1980, but later said he was not sure of the date. The trial court denied the new trial motion on both substantive and timeliness grounds.

Beeman appealed his conviction, and the Iowa Supreme Court affirmed. State v. Beeman, 315 N.W.2d 770 (Iowa 1982). He sought state collateral relief, which was denied. Beeman v. Nix, No. C2884-783 (Iowa Dist. Ct. Dec. 26, 1984).

Beeman filed for habeas relief in the federal district court, alleging that he had received ineffective assistance of counsel in three particulars: first, that his counsel failed to file the new trial motion in time; second, that his counsel failed to seek a mistrial to permit the presentation of the bank slip and passbook as evidence; and third, that his counsel failed to call him as a witness at the suppression hearing and failed to file a timely suppression motion.

The State answered that Beeman had committed procedural default barring review of the first two issues. In response, Beeman admitted that those two issues were not raised in his appeal of the state post-conviction proceeding. Beeman's brief stated: "In reviewing recent Eighth Circuit and U. S. Supreme Court cases, it appears that Petitioner's claims may not have been procedurally preserved as completely as the current state of the law requires, barring applicability of an exception to the doctrine of procedural default." Beeman argued that he had established the fundamental fairness exception to the procedural default rule by showing factual innocence in accord with Schlup v. Delo, 11 F.3d 738, 741, 743 (8th Cir. 1993), rev'd, 115 S. Ct. 851 (1995).

The district court considered and rejected Beeman's actual innocence claim, concluding that the evidence he offered did not reach the required level. Beeman relied on the bank slip dated April 22, as well as the testimony of Leslie Brown at the new trial and another witness, Darlene Sandven, who claimed at trial to have seen Winkel on April 22. The court considered the date on the bank slip in conjunction with testimony in a deposition taken in the case, which "explained that the transaction occurred at a branch office of the bank at approximately 3:00 p.m. on April 21, 1980. The timing of the transaction caused the bank slip to be postdated to April 22, 1980." As for the testimony of Leslie Brown and Darlene Sandven, the court stated that Sandven testified at trial that she thought she had seen Winkel on April 22. The court stated that "Brown's testimony did nothing to bolster Sandven's claim that she saw the victim on April 22, 1980." Therefore, the court determined that the evidence, taken as a whole, did not meet the standard for showing Beeman was actually innocent so that the court should excuse his procedural defaults.

The parties agreed that the claim of ineffective assistance in connection with the suppression motion was not procedurally barred. Beeman claimed that his counsel was ineffective because he failed to file the suppression motion in time. The district court examined this claim in light of Strickland v. Washington, 466 U.S. 668, 687 (1984), which allows relief only if there was both inadequate representation and prejudice resulting from that inadequacy. The court found that Beeman's counsel was not ineffective in filing the suppression motion late, but rather that Beeman himself caused the tardiness by failing to inform his counsel of the facts that supported the motion to suppress. "The court finds trial counsel promptly filed the motion to suppress when he learned information from petitioner that would support the motion." Nor was Beeman prejudiced by the late filing, since the

-5-

state trial court considered the merits of the motion despite its tardiness.

Beeman also claimed that his counsel was ineffective because he failed to call Beeman as a witness in the suppression hearing. The district court found that counsel testified credibly that the decision not to call Beeman was a matter of strategy. Moreover, the district court examined Beeman's testimony at trial concerning the circumstances of his confession. The court held that Beeman's trial testimony did not contradict the accounts the police gave of the confession, and that there was no showing that Beeman was prejudiced by his counsel's decision not to call him as a witness at the suppression hearing.

## I.

Beeman argues that the new evidence of the bank slip and passbook, together with the testimony of Leslie Brown, is a sufficient showing of actual innocence to excuse his procedural default. The district court correctly articulated the proper standard, requiring Beeman to show that in light of the newly available evidence, together with the evidence produced at trial, see Schlup v. Delo, 115 S. Ct. 851, 867 (1995), "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," had the new evidence been produced at trial. Id. Beeman does not quarrel with the district court's standard, but argues that the district court erred in concluding that the facts in his case did not meet the Schlup standard.

We review de novo the district court's application of the Schlup standard to the facts of this case. See O'Dell v.

-6-

Netherland, 95 F.3d 1214, 1250 (4th Cir.) (en banc), cert. granted on other grounds, 117 S. Ct. 631 (1996).  The testimony of Leslie Brown would have added very little to Beeman's case at trial, since Brown said he was uncertain whether the date on which he had seen Winkel was Tuesday, April 22, or perhaps April 17.  The bank slip and passbook are, in themselves, more troubling.  However, the State offered the explanation that the banking documents were postdated because they reflected transactions effected after 2:00 p.m.  The district court accepted this explanation.  Beeman has the burden of establishing actual innocence, Schlup, 115 S. Ct. at 867, yet he offers no evidence casting doubt on the State's explanation for the April 22 date on the bank documents.  Accordingly, we conclude that Beeman has failed to show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id.

## II.

Alternatively, Beeman argues that he did not commit procedural default on his claims for ineffective assistance in connection with the new trial motion and the failure to move for a mistrial.  Beeman's brief in the district court appears to concede that he committed procedural default.  At any rate, Beeman's brief before this court does not contend that he raised his current ineffective assistance of counsel claims in the state courts.  He only claims to have raised the issues of whether the trial court should have instructed the jury to disregard the bank documents and whether the State failed to disclose exculpatory evidence.  These questions are significantly different, both factually and legally, from the ineffective assistance of counsel claims Beeman now raises.  See Duncan v. Henry, 115 S. Ct. 887, 887-88 (1995).  The district court did not err in holding these issues were precluded by procedural

default.

### III.

Beeman renews his claim that his counsel was ineffective in failing to move to suppress his confession in a timely manner and in failing to call Beeman as a witness at the suppression hearing. The district court found that the lateness of the motion was not counsel's fault, but rather that counsel moved to suppress as soon as he learned of Beeman's allegations. Therefore, Beeman's counsel was not ineffective. Beeman has not shown that the district court's finding was clearly erroneous.

Counsel's decision not to call Beeman to testify at the suppression hearing did not result in prejudice, since Beeman's testimony at trial did not establish any coercion by the police. See Colorado v. Connelly, 479 U. S. 157, 167 (1986). Beeman's assertions about what the police said and did were equivocal--in one passage Beeman says the policeman said if the crime were manslaughter, "they could try to help me" (emphasis added), and in the next phrase Beeman says "they would help me all they could," (emphasis added). But even taking Beeman's strongest formulation, the alleged representation contained no specifics about what help was being offered and was phrased as an inchoate possibility. It was simply not enough to justify suppression of the confession.

We affirm the district court's dismissal of Beeman's petition.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.