# IN THE COURT OF APPEALS OF IOWA

No. 20-1288
Filed October 20, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM D. BEEMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling,

Judge.


        William Beeman appeals the denial of his motion for a new trial based on

newly discovered evidence. **WRIT ANNULLED.**


        Joshua A. Tepfer and Lindsay Hagy of the Exoneration Project at the Univ.

of Chicago Law School, Chicago, Illinois, Tricia J. Rojo Bushnell of Midwest

Innocence Project, Kansas City, Missouri, and Erica A. Nichols Cook of Wrongful

Conviction Division, Special Defense Unit, State Public Defender's Office, Des

Moines, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven and Timothy M.

Hau, Assistant Attorneys General, for appellee.


        Heard by Mullins, P.J., and May and Ahlers, JJ.

**MULLINS, Presiding Judge.**

## I.      Background

William Beeman was convicted of first-degree murder in 1980.  The State theorized Beeman killed the victim in the late-evening hours of April 21, 1980. Beeman broke his foot on April 22 and had an alibi until the time the victim's body was discovered on April 26.  Following questioning by law enforcement on May 7 and 8, Beeman

> made a statement, later reduced to writing and signed by [him], that he had taken the victim to Wild Cat Den State Park, attempted to have sexual intercourse with her, and, when she refused, kicked her in the head with his steel-toed boots.  He could not recall stabbing or sexually assaulting [the victim].

*State v. Beeman*, 315 N.W.2d 770, 774 (Iowa 1982).[1]  The victim had been stabbed several times and suffered head trauma, and the evidence indicated she had recently engaged in sexual activity.  The statement provided Beeman encountered the victim at 11:00 p.m. on April 21 and drove her to the park before the incident.  However, three witnesses testified to seeing or speaking with Beeman between 10:30 p.m. and 11:59 p.m.  As noted, Beeman was convicted of the murder.

Shortly thereafter, Beeman moved for a new trial, arguing the State suppressed allegedly exculpatory evidence—the identity of Leslie Brown, "one of a group of up to eleven suspects in the slaying" who reported he thought he saw the victim on April 22 but later said he was probably mistaken and actually saw her

---

[1] *Overruled by State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006) (holding "that, if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes").

on April 17. *Id.* at 777–78. The supreme court affirmed the denial of the motion, concluding the evidence did not create a reasonable doubt of guilt. *Id.* at 778.

In June 2019, Beeman filed an application for DNA testing under Iowa Code section 81.10 (2019). The State responded that the evidence requested was unavailable. In his reply, Beeman requested the court order the State to turn over the investigative files in their entirety. Following a hearing, the court entered an order directing the State to locate all available evidence and provide Beeman's counsel and investigator access to the same.

In June 2020, Beeman filed a second motion for a new trial. He alleged that, in December 2019, he "discovered, for the first time, evidence that the State long withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)," namely witnesses who believed to have seen the victim alive after April 21 and when Beeman had an alibi, detailed information about several other suspects law enforcement pursued, other witnesses unknown to the defense, and new scientific evidence disputing the State's theory of the date of the victim's death. Beeman also highlighted evidence of discord in the victim's family. The State filed a resistance and motion to dismiss, arguing the defense was aware of the evidence, it could have been obtained in the exercise of due diligence, it was not material and would not have changed the outcome of the trial, there was no good cause for the court to consider the untimely motion for a new trial, and the remaining claims concerning spoliation of forensic evidence were not properly before the court. Beeman generally repeated his arguments in his reply.

The matter proceeded to a hearing in August. Dr. Baker, a medical examiner certified in anatomic and clinical pathology with a sub-specialty in

forensic pathology and an impressive educational and professional background, testified at the hearing. He reviewed the case and weather data around the time of the crime. His review disclosed the local medical examiner, Dr. McGinty, viewed the victim's body at 8:00 p.m. on April 26, 1980 and conducted an autopsy at 9:30 a.m. on April 27. McGinty's report noted the presence of rigor mortis in the jaw, neck, back, legs, arms, and chest. Dr. Baker explained circumspect in the medical field in using rigor mortis to determine the time of death "because there's a great deal of variability because it's a biological phenomenon" and onset and dissipation of rigor mortis will be faster in a warmer environment. "[B]ut in general, rigor mortis will set in and become quite developed after a body has been dead for about six to twelve hours," "[i]t will stay quite developed for about another twelve hours, and then over the ensuing twelve hours, it dissipates and the body essentially becomes flaccid again." Generally, "after about a day and a half, under reasonably normal climatic conditions, the rigor mortis in a body will be gone and that body will be flaccid again." Reviewing photos of the victim, Dr. Baker explained his opinion her stomach would have been bloated and her lower quadrants would be developing discoloration if she had truly been dead since April 21, neither of which she exhibited. He also did not observe any skin slippage, which is a sign that a body is starting to decompose. Based on his review, Dr. Baker opined, to a reasonable degree of scientific certainty, "the findings at autopsy are not consistent with the hypothesis that she was killed on April 21, 1980." On cross-examination, however, Dr. Baker agreed "the only reliable time of death that a pathologist can give you is sometime between the time last seen alive and the time the body was found."

One of Beeman's trial attorneys also testified. He recalled receiving a letter from the State identifying three witnesses who purported to have seen the victim after April 21. He did not recall being provided with names of other witnesses with similar recollections and stated, if he had, he would have investigated them. He also did not recall receiving a list of alternate suspects or being told that boy scouts camping in the park heard a woman scream at 1:00 a.m. on April 26. Beeman's co-counsel testified to a generally similar recollection in a deposition. However, the evidence shows when defense counsel deposed one of the investigating officers, the officer advised counsel that law enforcement had a list of other suspects that bounced around between five and eleven other individuals.

Following hearing, the court denied Beeman's motion for a new trial. The court found Dr. Baker's opinion testimony was not "new evidence," the additional timeline witnesses alleged to have been suppressed by the State were of no value to the defense, and the defense knew the State had pursued other suspects. Pursuant to Iowa Rule of Civil Procedure 1.904(2), Beeman filed a motion to reconsider, enlarge, or amend, which the court denied.

Beeman appeals, challenging the denial of his motion for a new trial.

## II. Jurisdiction

To begin, the State submits Beeman has no right of appeal from a ruling denying his motion for a new trial. *See* Iowa Code § 814.6. We agree "Iowa Code section 814.6 does not provide [him] an appeal as a matter of right from the

adverse ruling on his post-sentencing motion for new trial." *State v. LePon*, No. 18-0777, 2019 WL 2369887, at *5 (Iowa Ct. App. June 5, 2019).[2]

> Rather, an appeal from the denial of a post-judgment motion for new trial must be taken either: (1) by application for discretionary review under Iowa Rule of Appellate Procedure 6.106 of "[a]n order raising a question of law important to the judiciary and the profession" as permitted by Iowa Code section 814.6(2)(e), or (2) on petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.107, as a claim the district court exceeded its jurisdiction or otherwise acted illegally.

*Id.* at *6 (alteration in original) (quoting *State v. Anderson*, No. 14-1767, 2016 WL 3272143, at *3 (Iowa Ct. App. June 15, 2016)). And rule 6.108 allows us to treat Beeman's notice of appeal as either an application for discretionary review or petition for writ of certiorari.

On our review, we conclude the challenged ruling does not "raise a question of law important to the judiciary and the profession,"[3] at least upon the circumstances of this case and analysis below, so discretionary review is inappropriate. *See* Iowa Code § 814.6(2)(e). Certiorari proceedings are only available when a party claims the court exceeded its jurisdiction or otherwise acted illegally. Iowa R. App. P. 6.107(1). There is no claim the court exceeded its jurisdiction. Beeman does claim the district court misapplied the law, which is a sufficient allegation of illegality to trigger the availability of certiorari proceedings. *See State Pub. Def. v. Iowa Dist. Ct.*, 731 N.W.2d 680, 683 (citation omitted).

---

[2] We have previously rejected Beeman's argument on reply that Iowa Rule of Appellate Procedure 6.103(1) provides a right of appeal. *See LePon*, 2019 WL 2369887, at *3 & n.1.

[3] Beeman submits caselaw among jurisdictions is inconsistent on a due diligence requirement under *Brady*. We find it unnecessary to reach that issue.

Exercising our discretion, we choose to grant the writ and proceed to the merits. *See State v. Propps*, 897 N.W.2d 91, 97 (Iowa 2017).

### III.     Standard of Review

Because the denial of the motion for a new trial is before us on certiorari, Beeman's *Brady* claim implicates his constitutional right to due process, and his motion for a new trial is based on a rule designed to implement the constitutional demands of due process, there is a question as to whether our review should be for an abuse of discretion, correction of legal error, or de novo. *See State v. Christensen*, 929 N.W.2d 646, 676 (Iowa 2019) (noting, "[w]e have broadly stated many times and in many contexts that when constitutional issues are involved, the standard of appellate review of fact-finding by the district court is de novo" but finding it unnecessary to address whether de novo review applies to "claims involving rules implementing constitutional rights" when the court "generally agree[s] with the fact-finding of the district court")[4]; *Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 464 (Iowa 2016) (noting certiorari actions are reviewed for legal error) *State v. Linderman*, 958 N.W.2d 211, 218 (Iowa Ct. App. 2021) (reviewing denial of motion for a new trial for an abuse of discretion). But, because "we generally agree with the fact-finding of the district court," the result in this case does not depend on the standard of review." *Christensen*, 929 N.W.2d at 677–78. And Beeman lodges no meaningful complaints about the district court's fact findings. Because both we and Beeman agree with the courts findings of fact, the only task

---

[4] While Beeman does raise a constitutional claim under *Brady*, rule 2.24(2)(b)(8) generally implements those rights and is the vehicle for obtaining a new trial based on a violation of those rights.

is for us to adjudicate rights anew based on those facts and the law, which would involve whether the court abused its discretion or committed legal error. So we simply consider whether the court's exercise of discretion was based on grounds clearly untenable or to an extent clearly unreasonable, or the court committed legal error by erroneously applying the law.[5] *See State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018).

## IV.    Analysis

On appeal, Beeman urges he is entitled to a new trial because the State committed a *Brady* violation by allegedly suppressing exculpatory evidence that would have changed the outcome of his trial. Rule 2.24(2)(b)(8) authorizes the court to grant a new trial "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial."[6]

As to the State's consideration of alternate suspects, the record is undisputed that the defense was informed that law enforcement had up to eleven suspects in mind. The defense did not pursue that information any further. Any evidence about alternative suspects could have been obtained and produced at trial with reasonable diligence, *see* Iowa R. Crim. P. 2.24(2)(b)(8), and the defense knew about the existence of alternative suspects, so the evidence was not

---

[5] *Christensen*, effectively clarifies a de novo review is unnecessary in cases with various avenues for the standard of review when we agree with the fact-finding of the district court.

[6] We assume without deciding Beeman has good cause to file his untimely motion for a new trial. *See* Iowa R. Crim. P. 2.24(2)(b)(8) ("A motion based upon this ground shall be made without unreasonable delay and, in any event, within two years after final judgment, but such motion may be considered thereafter upon a showing of good cause.").

suppressed within the meaning of *Brady*. *See Aguilera v. State*, 807 N.W.2d 249, 252–53 (Iowa 2011) ("Exculpatory evidence is not 'suppressed' if the defendant either knew or should have known of the essential facts permitting him to take advantage of the evidence." (citation omitted)).

We turn to the evidence of other witnesses who believed to have seen the victim after April 21. Those witnesses include Michelle Martin, Juanita Knox, Theresa Shoemaker, Jim Barela, Virginia Norwood, Vallorie Adkins, and, apparently, Janice Dwyer.[7] As to this evidence, Beeman largely complains the district court improperly considered the effect of each witnesses' accounts piecemeal as opposed to cumulatively.

> To establish a *Brady* violation, a defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defendant, and the evidence was material to the determination of guilt. The materiality element requires a counterfactual inquiry. The defendant must establish that there exists a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Barrett*, 952 N.W.2d 308, 312 (Iowa 2020) (altered for readability). We consider the new evidence cumulatively and "examine whether the exculpatory evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 313 (citation omitted).

Martin reported to police that she saw the victim while Martin was driving by the mall on April 25 around 4:00 p.m. However, the victim's purse was found in

---

[7] We, like the State, are unable to find anything in the record to verify Dwyer's account, other than a reference to Dwyer in a handwritten note. While Beeman's briefs point us to where the interview notes as to the other witnesses can be located in the appendices, the same is not true for Dwyer.

the park where her body was later discovered the morning of April 25.[8]  Based on this, one of Beeman's attorneys said he would not have called her as a witness.

Juanita Knox and Theresa Shoemaker reported seeing the victim at the local mall's movie theater on April 22.  However, a ticket stub found in the victim's purse was sold on April 19.

Jim Barela and Virginia Norwood reported seeing the victim at a disco speaking to Greg Monroe the evening of April 23.  But defense counsel investigated Monroe, and counsel determined Monroe was more likely at the disco on April 16 rather than April 23.  Specifically, Monroe reported to law enforcement he could not recall whether he was there on April 16 or 23.  Counsel assessed as "fair" the State's position that calling Monroe and Norwood to testify as to the date in question would therefore be pointless.

Vallorie Adkins reported she saw the victim at the disco dancing with Beeman on either April 19 or 23, but when she was there, Beeman did not have an injured foot, which was injured on April 22, and did not have a cast or crutches; she had since seen Beeman and observed he was on crutches.  Janice Dwyer also reported seeing the victim on either April 16 or 23, but the circumstances of her alleged sighting are unknown.

At the murder trial, Darlene Sandven testified she saw the victim at the local mall on April 22.  This testimony was in line with the recollections of Knox and Shoemaker.  Monroe was disclosed to the defense but did not testify.  He originally reported he saw the victim at the disco on April 23.  Three other undisclosed

---

[8] This negates the materiality of the evidence that campers heard a woman scream in the park early the next morning.

witnesses—Barela, Norwood, and Adkins—thought they might have seen the victim there on April 23 as well. Beeman maintains that the cumulative effect of all of these witnesses' recollections would have supported the defense's theory of the case, that the victim was killed at a time when Beeman had an alibi, and would have changed the outcome of the trial.

The cumulative effect of testimony from Sandven, Knox, and Shoemaker that they thought they saw Martin at the mall on April 22 would have easily been discounted by the State with the used ticket stub found in the victim's purse that was purchased on April 19. True, four witnesses also believed they saw the victim at the disco on April 23. But Monroe, who counsel investigated, later said he was probably there on April 16, Barela and Norwood's accounts hinged on Monroe being there when they saw the victim, and Adkins's account does not add up because Beeman did not appear to have a broken foot when she saw both him and the victim there. Martin's account also does not add up because the victim's purse was found in the park where her body was later discovered, before Martin was believed to have seen her at the mall.

On the other side of the ledger, we have a signed confession from Beeman, admitting he killed the victim on April 21. While Beeman continues to maintain in this appeal that his confession was coerced, that ship has sailed. *See Beeman*, 315 N.W.2d at 778–79; *see also Beeman v. Iowa*, 108 F.3d 181, 184–85 (8th Cir. 1997), *cert. denied* 522 U.S. 846 (1997). In addition, trial testimony was received by the jury from a deputy concerning an exchange he had with Beeman while transporting him from the courthouse to the jail in July 1980:

On the way back as we were returning from the courthouse, we just got outside the door and the subject of escape came up; and I didn't think Mr. Beeman could escape; and he stated that he felt he could; and I said, again, I didn't really feel it was possible; and he said, "Well, I could." He said, "The way I would do it is kick you in the head just the way I did her." And so I said, "Well, I don't think you can outrun a bullet." And Mr. Beeman said, "Well, if I kicked you in the head, you'll be on the ground dead and you won't be able to use your gun."

Upon our examination, we are unable to conclude the alleged exculpatory evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" and evidence does not entitle Beeman to a new trial. *See Barrett*, 952 N.W.2d at 313 (citation omitted).

## V.    Conclusion

Finding no illegality or abuse of discretion in the district court's denial of Beeman's motion for a new trial, we annul the writ of certiorari.

**WRIT ANNULLED.**