STATE of Iowa, Appellee,

v.

Willie Frank CRAIG, Appellant.

No. 91–1637.

Supreme Court of Iowa.

Oct. 21, 1992.

James L. Ottesen, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., William E. Davis, County Atty., and Michael Walton, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Defendant brought this appeal following his jury conviction of assault with intent to inflict serious injury. Iowa Code § 708.4 (1991). Following his appeal we resolved the issue presented by the first of his three assignments of error. *State v. Jones*, 490 N.W.2d 787, 792 (Iowa 1992) (finding no constitutional or statutory violation in compiling jury pools). Because we also find no merit in Craig's other assignments we affirm his conviction.

Craig admits he injured the victim, Charles Satterfield, in a fistfight, but pleads his acts were justified as self-defense. Conflict between Craig and Satterfield began the previous night. Satterfield and two men named Shull (father and son) were enjoying the night air on landings or porches of the apartment building where they all resided. From the balcony above, Craig flipped a cigarette over the railing. It landed in the area where Satterfield and the Shulls were sitting. Craig alleges he came down the stairs to make amends after the three shouted at him. Craig claims that Satterfield produced a pistol and handed it to one of the Shulls who pointed it at Craig in a threatening manner. The other Shull produced and flourished a martial arts weapon known as nunchakus. Harsh words were spoken and Craig departed.

Craig encountered Satterfield the next morning and again sought to make amends. Satterfield responded with foul language and racial epithets. Craig is African–American. Later that day Satterfield rounded a corner into an outside alcove where Craig had been visiting with friends. He said something to Craig and, according to Craig, appeared to reach under his shirt. Craig struck Satterfield several times, knocking him to the ground. Satterfield's head struck a curbstone and he was rendered unconscious. Craig alleges he acted under the mistaken belief that Satterfield was armed and was reaching for a weapon. This belief, he testified, stemmed from the incidents earlier in the day and the previous evening.

Officer Wahl of the Davenport Police Department, one of the officers responding to the altercation, recovered the gun from Satterfield's apartment. Craig alleges another officer, probably Officer Lennon, took possession of the nunchakus at some point. There was no mention of the nunchakus in any police report or trial testimony. The officer who found them was on leave, out of the country and could not be produced at trial.

■ I. Craig assigns error in the State's failure to preserve the nunchakus as evidence. He asserts this failure violated his constitutional right to due process. We have said:

> To prove a due process violation based on destruction of evidence, the defendant must show (1) a proper defense request for the evidence; (2) that the evidence was material; and (3) that the evidence would have been significantly favorable to the defendant.

*State v. Hulbert*, 481 N.W.2d 329, 334 (Iowa 1992). *See also State v. Brown*, 337 N.W.2d 507, 509 (Iowa 1983). Our *Hulbert* and *Brown* holdings are in compliance with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The showing required by this three-prong test, known as the *Brady* test, is satisfied in two related yet dissimilar circumstances: (1) intentional destruction of material exculpatory evidence ("material" being the second prong of the *Brady* test and "exculpatory" the third prong); and (2) bad faith destruction of material *potentially* exculpatory evidence. As to the first circumstance, we have long held that the *Brady* spoilage rule does not apply where the destruction of evidence was merely negligent; the destruction must be intentional in order for the rule to apply. *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979).

Beginning with *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1989), a bad faith requirement has been introduced into the analysis.[1] To find a due process violation, *Youngblood* requires more objectionable police conduct (bad faith) when the exculpatory value of the destroyed evidence is not suitable for evaluation. Where the lost evidence is only *potentially* exculpatory,

---

1. The *Youngblood* court said:

    The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.

    *Youngblood*, 488 U.S. at 56, 109 S.Ct. at 337, 102 L.Ed.2d at 288 (quotation appearing in footnote). *See Hulbert*, 481 N.W.2d at 334 (quoting *Youngblood*).

where by its nature the lost evidence cannot be evaluated by a fact finder, a due process violation will not be found in the absence of a showing of bad faith.[2] In other words, when *potentially* exculpatory evidence is at issue the third prong of the *Brady* test cannot, by definition, be satisfied and is replaced by a bad faith requirement. On the other hand, if the exculpatory value of the lost evidence is suitable for evaluation by a fact finder, a due process violation will be found upon a showing that the evidence was exculpatory and its destruction was deliberate.

The nunchakus' nature and quality is, or can be, made known; a fact finder can evaluate whether it is material exculpatory evidence. Hence it is not subject to the *Youngblood* bad faith analysis and the *Brady* test is to be conducted on the basis of whether its destruction was deliberate. The evidence in this case fails this test. There is no satisfactory evidence the nunchakus came into the possession of the police, much less that the police deliberately destroyed them. If we were to assume the nunchakus had been destroyed by the police, at most the destruction would have been no more than negligent.

We do not suggest the nunchakus would pass the second or third *Brady* tests. Craig thinks it passes the second test because, he contends, the nunchakus would corroborate his testimony pertaining to his defense of justification. It is difficult to believe this evidence would add anything to his defense. At the time of the fight Craig had no reason to fear Satterfield was reaching for the nunchakus. It was one of the Shulls, not Satterfield, who had produced them the prior evening. We think the nunchakus were unrelated to Craig's defense of justification.

Craig would also have difficulty establishing the third *Brady* test. There is no indication the evidence would have been significantly favorable to him. As mentioned, the nunchakus were unrelated to Craig's defense of justification. Therefore, at most, Craig could only hope to use the

nunchakus to enhance his credibility by corroborating his portrayal of the events the evening before the fight. Those events are, however, not in dispute.

We find no merit in the assignment.

■ II. Craig thinks the prosecutor was guilty of misconduct by a remark made in closing argument to the jury. The prosecutor said Craig was speaking with friends prior to the incident and asked the jury why those friends did not testify.

Our review is for abuse of discretion. *State v. Anderson,* 448 N.W.2d 32, 33 (Iowa 1989). Craig cites language from our opinion in *State v. White,* 225 N.W.2d 104, 106 (Iowa 1975), which Craig takes to mean it is always misconduct for a prosecutor to comment on a defendant's failure to call witnesses. Our language in *White* may have been too expansive; that holding is limited to its facts. It must be remembered that the witness principally involved in *White* was White's wife.

The correct rule was explained in *State v. Bishop,* 387 N.W.2d 554, 563 (Iowa 1986):

> In the past we have expressed concern about prosecution arguments that focus on lack of evidence or failure to produce witnesses.... However, not all remarks relating to the evidence are forbidden. *"A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify."*

(Emphasis added) (Citations omitted).

Under the circumstances here, the language used by the prosecutor amounted to fair comment. Any intimation to the contrary in *State v. White* is overruled.

AFFIRMED.

---

**2.** An example of lost evidence that would not be subject to evaluation would be a blood sample, withdrawn to test its alcoholic content but not tested prior to its loss.