## IN THE COURT OF APPEALS OF IOWA

No. 23-1467
Filed December 18, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GUSTAF ROY CARLSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, Judge.

A defendant appeals his conviction and sentence for second-degree theft.

**THEFT CONVICTION AND HABITUAL-OFFENDER JUDGMENT AFFIRMED; SENTENCE VACATED; REMANDED FOR FURTHER PROCEEDINGS.**

Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Buller, P.J., Sandy, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**GAMBLE, Senior Judge.**

A jury convicted Gustaf Roy Carlson for second-degree theft for possessing a stolen truck. Carson was on parole at the time of his offense. Carson stipulated he had two prior felony convictions as a habitual offender. The court sentenced Carson as a habitual offender and ran his sentence consecutive to his parole revocation. Carson appeals his conviction and sentence.

Carlson argues the district court erred in (1) denying his motion for judgment of acquittal when the State had presented insufficient evidence to convict him, (2) allowing the prosecutor to burden shift by questioning him on his failure to produce a bill of sale and later commenting on that failure during closing, (3) failing to comply with habitual-offender stipulation requirements such that his stipulation to his prior convictions was not knowing and voluntary, (4) failing to provide any reason supporting its consecutive sentence order, and (5) refusing to set a hearing on Carlson's challenge to restitution. We affirm both Carlson's conviction and the district court's judgment on his habitual-offender enhancement, but we vacate his sentence and remand to the district court for proceedings consistent with this opinion.

## I.     Background Facts and Proceedings

In March 2023, Carlson was stopped by Ames Police Officer Steven Spoon while driving a 2007 Dodge Dakota in Ames. Officer Spoon stopped Carlson because the truck did not match the vehicle to which the license plates were registered. When Officer Spoon informed Carlson that the plates did not match, Carlson said "he'd just bought the truck." Carlson did not have the title or a bill of

sale on hand and has not produced those documents since the date of the initial stop.

Officer Spoon then walked around to the front of the car to record the VIN from the vehicle's windshield. Some papers were wedged in the windshield and blocked the place where the VIN should have been located. After Carlson removed those papers, it became apparent that the VIN had been removed. Officer Spoon confirmed that "the entire [VIN] plate, including the rivets, were missing." Carlson stated the VIN had also been removed from the door jams—he suggested the previous owner had removed them. The vehicle was also missing the stereo. The truck's registered owner testified that when she went to pick up the truck from impound "[t]he dash inside had been, like, popped off, and the stereo had been taken out, and there was wires exposed." She also testified that the stereo had been intact and undamaged before the vehicle was stolen.

Carlson had the other passengers in the vehicle take some bags of items in the truck before Officer Spoon detained Carlson. Carlson was released from detainment and then later arrested on a warrant outside of his residence. The truck was stolen in January, and the registered owner testified that the truck Carlson was driving belonged to her.

Carlson was charged with second-degree theft as a habitual offender. At trial, Officer Spoon testified that mismatched plates are consistent with a vehicle having been stolen. The State asked Officer Spoon if Carlson had ever produced the purchase paperwork and Carlson's attorney objected, arguing that the State was burden shifting:

Q. And as far as the title, you mentioned that there would have signatures on the title? A. Yes.

Q. Was Mr. Carlson able to produce any of that documentation to you? A. No.

Q. What did he tell you or did he provide any sort of excuse about that? A. He told me that it was at home.

Q. But you specifically asked him for this paperwork; correct? A. Yes.

Q. To this day, we're in June now, end of June, and this traffic stop was—

[CARLSON'S ATTORNEY]: Objection, Your Honor.

COURT: Pardon me?

[CARLSON'S ATTORNEY]: Objection, Your Honor. It's shifting the burden.

COURT: Objection's overruled.

BY [THE PROSECUTOR]: Q. To this day, have you been provided by any party any title or bill of sale relating to the sale of that vehicle? A. No.

In closing and rebuttal, the State again addressed Carlson's failure to produce

documentation:

The bill of sale or title was never produced. [Carlson] said, I have a bill of sale. I have a title. I have the paperwork from purchasing this vehicle. The officer testified he had an opportunity to retrieve that paperwork when he was released from jail and no such bill of sale or title has ever been produced. Why? You can infer from that fact that there is no bill of sale or title.

. . . .

Now, defense asked a question, how can he get the paperwork when he's in jail? Okay. So let's—let's assume this is true, that he has no idea that he's going to be charged with theft. He gets out of jail, he goes home, and then they come and arrest him for the theft of the vehicle and they say, you're under arrest for stealing that vehicle. At that point he doesn't say woah, woah, woah, wait, wait, what if I show you the title? Let me get the title. It's in the back. I'm at the house now. I'm just in the alley behind [my] house. The title's inside. Let me go grab it. Doesn't do that. And while he's in the jail communicating with his defense attorney talking about how he's going to defend this case, whether he's going to testify or not, he doesn't say, can you just go home, grab the title? That would really clear things up if we just showed the prosecution the title. That doesn't happen. No title was presented in the case from either party, no title was presented to the officer who investigated this case because the title doesn't exist. Because the bill of sale doesn't exist. If it did, you would have seen it.

After closing, Carlson moved for a mistrial based on the State's alleged burden shifting during trial and closing. The district court denied that motion and the jury convicted Carlson as charged. Carlson admitted having two prior felony convictions which removed any need for trial on his habitual-offender status. Before accepting that admission, the court informed Carlson of the following:

> All right. So Mr. Carlson, you do have a right to have a jury trial on those prior convictions, and it'd be just like the trial we've had today on the theft charge where the State would have to prove that you have those two prior convictions. And you have an absolute right to have the jury do that, or if you want to you may go ahead and admit that you have those two prior convictions, and we'll just proceed from there.

In its order entering the guilty verdict, the district court advised Carlson of the requirement to move in arrest of judgment to preserve appeals relating to his plea.

At sentencing, Carlson argued his theft and parole-revocation sentences should run concurrently. The district court ran the sentences consecutively and ordered $833.98 in victim restitution. Carlson now appeals.

Since appealing, Carlson requested a hearing on restitution which the district court first denied due to this appeal. But Carlson again requested a restitution hearing which the district court granted. A hearing has been set.

## II. Standard of Review

We "review the sufficiency of the evidence for correction of errors at law." *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). We consider all evidence and view it in the light most favorable to the State, "including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017) (citation

omitted). "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (citation omitted).

We review evidentiary issues and claims of prosecutorial error for abuse of discretion. *State v. Krogmann*, 998 N.W.2d 141, 150 (Iowa 2023); *State v. Craig*, 490 N.W.2d 795, 797 (Iowa 1992).

We generally review statutory interpretation for correction of errors at law. Iowa R. App. P. 6.907; *State v. Kukowski*, 704 N.W.2d 687, 690-91 (Iowa 2005). To the extent that review also involves constitutional claims, we review de novo. *See Kukowski*, 704 N.W.2d at 690. We also review sentencing decisions for correction of errors at law. *State v. Letscher,* 888 N.W.2d 880, 883 (Iowa 2016). We "will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Id.* (citation omitted).

Lastly, we review a district court's decision on whether to set a restitution hearing for abuse of discretion. *See State v. Blank*, 570 N.W.2d 924, 925 (Iowa 1997).

## III.    Discussion

## A.  Sufficiency of Evidence

To convict Carlson of theft in the second degree, in violation of Iowa Code sections 714.1(4) and 714.2(2) (2023), the jury was instructed that the State had to prove:

> 1. A 2007 Gray Dodge Dakota was stolen.
> 2. On or about March 26, 2023, the defendant exercised control over the vehicle.
> 3. At that time, the defendant knew the vehicle had been stolen.

        4. At the time the vehicle was stolen, the vehicle had a value
of more than $0, but less than $10,000.

The jury was instructed that "to 'know that the vehicle was stolen' means [Carlson] had conscious awareness that the vehicle was stolen" and that knowledge may be found without direct proof and "may be inferred from the circumstances."

We agree that the evidence presented and circumstances here provide strong support for the jury's finding that Carlson knew that the truck was stolen. Carlson objects to the State arguing his failure to produce a bill of sale or title provided evidence of his guilt. But the State was not arguing that mere failure to produce a title or bill of sale is evidence that a vehicle is stolen. It was meant to discredit Carlson in respect to his statements to Officer Spoon. Carlson told Officer Spoon that he had the truck's purchase documents "at home." The State pointed out that no documents were ever produced despite Carlson expressly stating he would provide them. That helped provide the jury with a basis on which it could infer that Carlson lied in his statements to Officer Spoon. *See State v. Ernst*, 954 N.W.2d 50, 56 (Iowa 2021) ("[A] false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and . . . is relevant to show that the defendant fabricated evidence to aid his defense.").

And even outside of Carlson's failure to produce documentation, strong evidence suggests that the truck was stolen. Officer Spoon testified that mismatched plates are common for stolen vehicles. The VIN was removed, and papers concealed its removal. Carlson told Officer Spoon he knew the VIN was removed and claimed the prior owner had removed it. The stereo was missing, and Carlson asked his passengers to remove items from the vehicle. Carlson

attacks the State's reliance on those facts, arguing that those facts do not, on their own, prove his knowledge that the truck was stolen. But we find that collectively, those facts create strong evidence against Carlson.

Further, Carlson's mere possession of a stolen truck serves as evidence of his guilt. "Recent possession by a defendant of stolen property is evidence of guilt and unless the explanation of such possession creates a reasonable doubt of defendant's guilt, a jury is justified in returning a verdict of guilty." *State v. Brightman*, 110 N.W.2d 315, 318 (Iowa 1961). And only two months had passed between the date the truck was stolen and the date Officer Spoon stopped Carlson, providing further evidence of his knowledge.

Considering this evidence in the light most favorable to the State, sufficient evidence supports Carlson's conviction for theft.

## B. Burden Shifting

Carlson next argues that the district court "erred in allowing the prosecutor to question a witness regarding [his] failure to produce a bill of sale or title for the vehicle and later to comment on this during closing and further abused its discretion in denying the motion for a mistrial based on burden shifting."

Our supreme court has outlined the circumstances under which the State comment on the defendant's failure to produce evidence without shifting the burden:

> In the past we have expressed concern about prosecution arguments that focus on lack of evidence or failure to produce witnesses . . . . However, not all remarks relating to the evidence are forbidden. "*A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify*."

*Craig*, 490 N.W.2d at 797 (citation omitted). Here the State permissibly "referenc[ed] the absence of evidence supporting [Carlson]'s theory," *State v. Coleman*, 907 N.W.2d 124, 143 (Iowa 2018), and made no comments, references, or implications relating to his failure to testify. As we stated above, the State's argument was meant to refute Carlson's own comments about his possession of the purchase documents and title.

The district court committed no error in permitting the State to comment on Carlson's failure to produce a bill of sale or title or question a witness relating to that failure.

### C. Voluntary and Intelligent Admission to Prior Convictions

Carlson claims the district court erred in failing to comply with the habitual-offender stipulation requirements such that his stipulation to prior convictions was not voluntary and intelligent. Specifically, Carlson argues the district court did not adequately explain the nature of the habitual-offender enhancement, the maximum possible punishment, that the State would have to prove Carlson had counsel during his prior convictions if he raised that issue. *See* Iowa R. Crim. P. 2.19(8); *State v. Harrington*, 893 N.W.2d 36, 43 (Iowa 2017); *State v. Smith*, 924 N.W.2d 846, 851 (Iowa 2019).

The State argues Carlson failed to preserve error because he failed to file a motion in arrest of judgment with the district court attacking his stipulation to prior convictions. *See* Iowa Rs. Crim. P. 2.8(2)(d), 2.24(3)(a)(2), *Harrington*, 893 N.W.2d at 41-43; *Smith*, 924 N.W.2d at 850-51. Carlson argues an exception to the error preservation applies because the district court failed to advise him of his

right to move in arrest of judgment during the stipulation colloquy and an advisory contained in a subsequent advisory was insufficient.

A stipulation to prior offenses for purposes of a sentencing enhancement is comparable to a plea of guilty and the rationale for the error preservation exception in the guilty plea context equally applicable to the prior-offenses stipulation. *Harrington*, 893 N.W.2d at 42. In assessing whether the district court complied with its duty to inform a defendant of his right to file a motion in arrest of judgment following a stipulation to prior offenses for purposes of the habitual-offender enhancement, we apply the substantial compliance standard that we use to determine if a trial court has discharged its duty under rule 2.8(2)(d) in the context of a guilty plea. *Smith*, 924 N.W.2d at 851.

After the jury returned a verdict finding Carlson guilty of second-degree theft, the district court conducted a hearing to determine if the issue of whether Carlson was a habitual offender should be submitted to the jury in a bifurcated trial. During this hearing, Carlson admitted having two prior felony convictions, removing the need for trial on his habitual-offender status.

Carlson correctly notes the court failed to inform him during the hearing that he had a right to file a motion in arrest of judgment to challenge his stipulation and if he failed to file do so he could not challenge appeal the stipulation to the appellate courts. *See Smith*, 924 N.W.2d at 85 ("The court's statement did not tie that right to the method of challenging the stipulation proceedings, nor did it ensure Smith understood that the failure to file such a motion would preclude him from challenging the proceedings on appeal.").

However, on that same day, the court filed an order entering judgment on the verdict and scheduling sentencing. This order informed Carlson:

> [Carlson] is advised of the right to file post-trial motions, including a motion in arrest of judgment. Pursuant to Iowa Rule of Criminal Procedure Rule 2.24 that a motion in arrest of judgment is an application by [Carlson] that no judgment be rendered on a finding, plea, or verdict of guilty. If [Carlson] wishes to challenge the adequacy of plea proceedings, a written motion in arrest of judgment must be filed with the clerk of court no later than [forty-five] days from today's date, but in any case not later than five days before the date set for sentencing. Failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude [Carlson]'s right to assert such challenge on appeal. If any post-trial motions are filed hearing on said motions shall be held at the time set for sentencing, to be followed by the sentencing hearing, if necessary.

We find this advisory contained in a written order filed on the day of trial substantially complies with the district court's obligation to inform Carlson of his right to challenge the prior offense stipulation by filing a timely motion in arrest of judgment and the consequences that failure to do so would have on his appeal. *See State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006) (noting the advisory was "[f]ollowing Straw's guilty plea"). The fact the advisory referred to a "guilty plea" rather than a "stipulation to prior offenses" is a matter of form over substance since such a stipulation is essentially a plea of guilty to habitual-offender status. *See Harrington*, 893 N.W.2d at 42; *State v. Waterland*, No. 19-0076, 2020 WL 824114, at *4–5 (Iowa Ct. App. Feb. 19, 2020). And while this order did not explicitly ensure that Carlson understood his rights and consequences in the same manner as a verbal advisory by the court during a colloquy, we expect defense counsel to explain the motion in arrest of judgment as set forth in the written order. *See State v. Oldham*, 515 N.W.2d 44, 46 (Iowa 1994). Accordingly, we conclude Carlson failed to preserve error on his challenge to his prior-offense stipulation.

### D. Sentencing

Carlson argues that the trial court abused its discretion in failing to give any reason to support ordering that the sentence imposed run consecutively to his parole revocation.

The district court is required to "state on the record its reasons for selecting the particular sentence," Iowa R. Crim. P. 2.23(3)(d), including when imposing consecutive sentences. *State v. Hill*, 878 N.W.2d 269, 271 (Iowa 2016). Iowa Code section 908.10(2) creates a statutory presumption of consecutive sentences for felonies committed while on parole, but the district court retains discretion to hand down concurrent sentences. That discretionary power makes it necessary for the district court to provide its reasoning when sentencing a defendant under section 908.10A. *See Hill*, 878 N.W.2d at 273. Providing a defendant with the court's reasoning makes the defendant aware of the consequences of their criminal actions and allows appellate courts to review the district court's discretion. *State v. Thompson*, 856 N.W.2d 915, 919 (Iowa 2014).

When the district court handed down its sentence, it explained that decision as follows:

> Well, Mr. Carlson, the purpose of sentencing you here today is to do two things. It's meant to rehabilitate you and protect our community from further offenses from you. What the record here shows, you do have a long prior criminal record and you committed this offense while on parole. And it's pretty clear, Mr. Carlson, that at this stage in your life, you cannot be in the community without committing criminal offenses and placing people at risk. And I don't think that a probationary period here is appropriate.
> . . . .
> So it is the order of this court that the Defendant is adjudged guilty of theft of a vehicle, in violation of section 714.2(2) of the Iowa Code. As a habitual offender, the Defendant is sentenced to serve an indeterminate term not to exceed fifteen years, and he is

committed to the custody of the director of the Iowa Department of
Corrections. He is given credit for time served. This sentence shall
be served consecutively to any sentence the Defendant receives on
a parole revocation.

Here, the district court expressly stated the reasons for sentencing Carlson to a period of incarceration rather than probation. But it provided no reasoning for its decision to impose consecutive sentences, which the court was required to provide Carlson. The State concedes the court erred in failing to provide reasons for imposing consecutive sentences. Therefore, we vacate the sentence and remand for further sentencing proceedings.

### E. Restitution Hearing

Carlson argues that the trial court erred when it refused to set a hearing on his challenge to the State's restitution claim, finding that it lacked jurisdiction to hear this challenge while the appeal was pending. He requests that "the case be remanded, and the trial court ordered to set a restitution hearing."

Mootness is a "threshold question." *Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) (citation omitted). We "will generally decline to hear a case when, because of changed circumstances, [our] decision will no longer matter." *Id.* (citation omitted).

On May 28, 2024, the district court set a restitution hearing—just as Carlson requested. In his reply, Carlson argues the issue is not moot because, despite a hearing being set, such hearing may not ultimately be held. But this argument is speculative and looks to the future rather than at any past error committed.

But Carlson also urges us to apply the public interest exception despite any mootness concerns. The public interest exception applies "where matters of public

importance are presented and the problem is likely to recur." *Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 922 (Iowa 1983). We can address the issue if the action "is such that often the matter will be moot before it can reach an appellate court." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 679 (Iowa 1998) (citation omitted).

Carlson fails to describe how this issue would evade appellate review. The mootness doctrine only prevents our review here because the district court's hearing has not yet been held. There is no action for us to review at this time. Thus, this issue is moot because the district court has granted Carlson the exact hearing he requested. We express no opinion on whether the district court in fact has jurisdiction to hold a section 910.7 restitution hearing when pecuniary damages were ordered as part of a final judgment of sentence that is pending on appeal.

## IV.    Conclusion

We affirm both Carlson's conviction for theft in the second degree and the district court's judgment on his habitual-offender enhancement. We vacate Carlson's sentence and remand to the district court for proceedings consistent with this opinion.

**THEFT CONVICTION AND HABITUAL-OFFENDER JUDGMENT AFFIRMED; SENTENCE VACATED; REMANDED FOR FURTHER PROCEEDINGS.**