# IN THE COURT OF APPEALS OF IOWA

No. 24-1756
Filed December 3, 2025

**WILLIAM D. BEEMAN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Mark Fowler,
Judge.

An applicant appeals the district court's dismissal of his claims for post-
conviction relief and the denial of relief based on his sole surviving claim over the
destruction of evidence.  **AFFIRMED.**

Erica Nichols Cook (argued), Assistant State Public Defender—Wrongful
Conviction Unit, Des Moines, and Tricia Rojo Bushnell of The Midwest Innocence
Project, Kansas City, Missouri, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant
Attorney General, for appellee State.

Heard at oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**GREER, Presiding Judge.**

William Beeman appeals the dismissal and denial of claims in his third application for post-conviction relief (PCR). First, he challenges the dismissal of his actual- and factual-innocence claim, arguing he was denied an evidentiary hearing. On his second challenge, he alleges that the State acted in bad faith when it destroyed critical biological evidence and thus, he should get a new trial.

Because we find Beeman's actual-innocence claim was previously rejected in an earlier PCR challenge and that Beeman failed to prove the State's bad faith in destroying evidence, we affirm the PCR court's decision.

## I. Background Facts and Proceedings.

This is Beeman's second appeal in his third PCR claim.[1] These proceedings stem from a murder that occurred in April 1980 when Michiel Winkel's body was found in a state park. She had been stabbed repeatedly, sustained a head injury, and was not wearing any clothing. The investigators used a sexual assault kit, including a vaginal swab, which confirmed she had been sexually assaulted. The sample contained blood and seminal fluid. Beeman was excluded as the source of the blood, but Winkel was not. Winkel's belongings, found at the

---

[1] Beeman filed for PCR in 1983 and again in 2007. Beeman's 1983 application sought relief under Iowa Code section 663A(4) (1983), namely that his trial counsel: allowed Beeman's inculpatory statements about kicking the victim in the head to be admitted at trial; failed to object to the felony murder instruction; and failed to object to witnesses who were "hypnotized" to remember seeing the victim with a man prior to her death. His second PCR, filed in 2007, alleged that his conviction was in violation of the United States Constitution or the laws of Iowa, the court was without jurisdiction to impose a sentence, the sentence exceed the maximum authorized by law, and there existed new evidence of material facts that required his conviction be vacated under a new case law in *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa Aug. 25, 2006). Both were denied.

scene, were also evaluated at the state crime laboratory. Her clothing also had blood stains.

Law enforcement interviewed a number of people, including Beeman. On the second day of interviews, Beeman initialed a typed statement where he described attempting to have sexual intercourse with Winkel but did not recall stabbing or sexually assaulting her. Afterward, charges were filed against Beeman and a trial was held. A jury convicted Beeman of first-degree murder and he was sentenced to life in prison. Additional facts underlying Beeman's criminal conviction are fully set forth in the opinion on his direct appeal. *See State v. Beeman* (*Beeman I*), 315 N.W.2d 770, 772–79 (Iowa 1982) (affirming his conviction and denial of his motion for a new trial).

But the procedural history gets complicated starting in 2019,[2] when Beeman sought DNA testing under Iowa Code section 81.10 (2019). But the DNA evidence was no longer available. The district court ordered the State to locate and provide access to all available evidence to Beeman's counsel and investigator. After reviewing the files, Beeman moved for a new trial on other grounds. The district court denied this motion, and he appealed. In that appeal, Beeman argued that he had

> "discovered, for the first time, evidence that the State long withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)," namely witnesses who believed to have seen the victim alive after April 21 and when Beeman had an alibi, detailed information about several other suspects law enforcement pursued, other witnesses unknown

---

[2] Prior to 2019, Beeman also had a federal habeas action *Beeman v. Iowa*, 108 F.3d 181, 185 (8th Cir. 1997), and a motion to correct an illegal sentence, both were denied. *See Beeman v. State*, No. 21-1129, 2022 WL 2826015, at *1 n.1 (Iowa Ct. App. July 20, 2022).

to the defense, and new scientific evidence disputing the State's theory of the date of the victim's death.

*State v. Beeman* (*Beeman II*), No. 20-1288, 2021 WL 4891010, at *1–2 (Iowa Ct. App. Oct. 20, 2021) (holding the district court exercised appropriate discretion in the denial of Beeman's motion for a new trial).[3]

In 2020, Beeman filed this third application for postconviction relief while he was still awaiting an appellate decision on the dismissed motion for new trial. Beeman argued in his third PCR application:

> he was entitled to a new trial due to the following: (1) actual innocence under *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018) based on newly discovered witnesses and scientific evidence, (2) the State's suppression of exculpatory evidence—the witnesses and alternate suspects—in violation of *Brady*, (3) the State's alleged presentation of false testimony, (4) the State's bad faith destruction of the biological evidence, (5) the admission and use of his unreliable confession violated his constitutional rights to due process, and (6) trial counsel was ineffective in failing to present scientific expert testimony on time of death.

*Beeman v. State* (*Beeman III*), No. 21-1129, 2022 WL 2826015, at* 1 (Iowa Ct. App. July 20, 2022) (cleaned up); *see also id.* at *1 n.4–n.9 (discussing the grounds for each of Beeman's claims). That PCR court dismissed the action as premature because Beeman's motion for new trial was ongoing. The PCR court noted that Beeman's issues in his "motion for a new trial [were] very similar or the same as the issues presented for [PCR]," and because the claims were not "ripe for adjudication" the district court "dismissed the PCR application as premature."

---

[3] We treated this appeal as a petition for writ of certiorari and granted the writ. *See Beeman II*, 2021 WL 4891010, at *2. Because we were "unable to conclude the alleged exculpatory evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict' and evidence does not entitle Beeman to a new trial," we ultimately annulled the writ. *Id.* at *5 (citation omitted).

*Beeman III*, 2022 WL 2826015, at *2. We affirmed the dismissal of the majority of his claims "as either time-barred by the statute of limitations or already the subject of a final adjudication in another proceeding Beeman has taken to secure relief." *Id.* at *4. That panel of our court reversed and remanded for further proceedings solely on "the entry of summary disposition on the destruction-of-evidence claim," which "related to the allegation that the State destroyed a sexual assault kit of the victim." *Id.* at *1 n.7, *4.

With that sole issue remaining in the underlying PCR action, in November 2023, Beeman filed an amended PCR application to include claims of actual innocence. The State filed a motion to dismiss, and the PCR court dismissed many of Beeman's claims finding some had already been adjudicated, some of the evidence could have been discovered through due diligence by the defendant, and some claims were not based on new evidence or science that would justify a new trial. This left the destruction of evidence as the sole issue for the PCR trial. After the June 2024 PCR trial, the district court denied his PCR application. Beeman appeals the dismissal of his actual-innocence claims and the denial of his PCR application.

## II. Standard of Review.

We review a PCR "court's ruling on a motion to dismiss . . . for correction of errors at law." *Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014). "A motion to dismiss may be granted when the

petition's allegations, taken as true, fail to state a claim upon which relief may be granted." *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012).

While we ordinarily review PCR rulings "for correction of errors at law," "our review is de novo when the basis for [PCR] implicates a constitutional violation." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).

### III. Analysis.

**A. Dismissal of Actual-Innocence Claims.** Prior to turning to the merits of Beeman's actual-innocence claims we note that these claims go beyond the scope of our remand. Beeman's claims of actual innocence stem from the amendment to his PCR application after our July 2022 opinion, where a panel of this court solely remanded for further proceedings on the destruction-of-evidence claim. *Beeman III*, 2022 WL 2826015, at *4. "It is a fundamental rule of law" that mandates by appellate courts are honored and respected. *City of Okoboji v. Iowa Dist. Ct.*, 744 N.W.2d 327, 331 (Iowa 2008). Here, Beeman's amended PCR application includes claims that mirror those we had affirmed the dismissal of and go beyond the scope of the sole issue we told the court to address on remand. But we recognize that the PCR court addressed the actual-innocence claims, so we consider the arguments made in this appeal.

Beeman argues claims in his amended PCR application were "based on newly discovered evidence of actual and factual innocence that surfaced as part of the motion for new trial litigation," and they are not time barred under Iowa Code section 822.3 because they could not have been made "within the applicable time period." *See* Iowa Code § 822.3. Beeman also argues that he met the necessary standard of proof under *Schmidt*. *See* 909 N.W.2d at 797 (noting that to succeed

on a freestanding actual-innocence claim, "the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence."). Beeman described his newly discovered evidence under five categories:

> 1) the crime scene does not corroborate Beeman's confession; (2) investigators contaminated Beeman's interrogation and statement with information and failed to investigate credible alternate suspects; (3) scientific advancements clarifying how false confessions occur shows that Beeman was particularly susceptible to providing a false confession; (4) blood stain pattern analysis contradicts trial evidence; and (5) cognitive bias was prevalent in the investigation.

The district court agreed with the State's arguments that the "new" claims were previously addressed or could have been presented or were available at the time of trial. The court granted the motion to dismiss the actual-innocence challenges. But Beeman argues his challenge is more nuanced than the court appreciated because some of the evidence was not produced to Beeman until 2019 and 2020. Finally, Beeman faults the PCR court for not holding an evidentiary hearing to allow an opportunity to create a record on the viability of his claims.

PCR applications must be filed "within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. Grounds "of fact or law that could not have been raised within the applicable time period" are not subject to this limitation. *Id.* Under section 822.3 the applicant must show "the alleged ground of fact could not have been raised earlier" and "the applicant must also show a

nexus between the asserted ground of fact and the challenged conviction." *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003). To show that the facts could not have been raised earlier, Beeman must prove "they could not have been discovered earlier than they were discovered in the exercise of due diligence." *Id.* at 521. "[P]ostconviction relief applications based on 'a ground of fact' that could not have been raised within the three-year limitation period, must also be filed within three years of the discovery of the new ground of fact or be barred." *Blackwell v. State*, No. 10–0681, 2012 WL 836766, at *4 (Iowa Ct. App. Mar. 14, 2012); *see Whiteside v. State*, No. 15–0534, 2016 WL 4051578, at *2 (Iowa Ct. App. July 27, 2016) (finding evidence did not fall within the exception to section 822.3 because "nothing in the record . . . indicates this information could not have been discovered, in the exercise of reasonable diligence, at the time of trial or during [the applicant's] first PCR action").

We have considered *Schmidt* new law "sufficient to avoid the time bar of section 822.3." *Quinn v. State*, 954 N.W.2d 75, 76 (Iowa Ct. App. 2020). But, "[w]e have found *Schmidt* does not apply to overcome the statute of limitations where the evidence put forward to support a claim of actual innocence was available to the applicant or could have been discovered with due diligence within the limitations period." *Id.* at 77; *see also Brewbaker v. State*, No. 18-1641, 2020 WL 5944205, at *2 (Iowa Ct. App. Oct. 7, 2020) (finding the PCR applicant's reliance on *Schmidt* misplaced, "[u]nlike *Schmidt*, [the applicant's] actual-innocence claim is not based on a newly discovered fact that could not have been discovered within the three-year time frame.").

Still, as for the five allegations raised by Beeman in his actual-innocence challenge, in his appellate briefing he only discussed a new report from an entomologist that concluded based upon entomological evidence that Winkel's date of death would likely have been two days later than originally established, and that Beeman learned there were animal scavengers at the park who would have altered a body left for days. Beeman also briefly mentioned that law enforcement's investigation was "flawed and credible suspects were ignored." We need only address the arguments made with the guiderails from our case law in mind. Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Likewise, "[a] party forfeits an issue on appeal when the party fails to make more than a perfunctory argument in support of the issue." *State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (listing a number of ways a party may forfeit an issue on appeal). We first address Beeman's claims about (1) the crime scene and date of death proof and (2) his arguments over the investigation and other potential suspects. We will then briefly address Beeman's other, waived claims in the interest of completeness.

1. *Crime Scene and Date of Death.* In his first claim, Beeman relies on reports of forensic entomology[4] and scavenger animals to conclude that the victim's date of death could not have occurred on the date stated in his confession. Here, Beeman fails to state why these facts were "newly discovered evidence" that could not have been presented earlier. As the PCR court determined:

> Beeman claims the crime scene does not corroborate [his] confession and looks to data regarding scavenger animals and/or blow fly/forensic entomology. Beeman states that study of this data

---

[4] Entomology involves the study of insects.

eliminates April 21, 1980, as the victim's date of death. Forensic entomology has been used for hundreds of years. It was commonly [in] use by the 2000's. Scavenger evidence has been utilized to determine the time of death in criminal cases since approximately 1936 and has been used commonly since 1975. Important papers were written on the topic in or about 2006.

From there, the PCR court noted that this scientific analysis was available or could have been discovered by due diligence within the statute of limitation period. We agree Beeman has failed to circumvent the time bar on this claim.

2. *Other Potential Suspects.* Beeman's second claim includes allegations that the State failed to pursue alternate suspects. We addressed a similar claim when Beeman appealed the denial of his motion for a new trial based on newly discovered evidence. *Beeman II*, 2021 WL 4891010, at *3–4 (discussing Beeman's knowledge of alternative suspects when affirming there was no *Brady* violation: "[a]s to the State's consideration of alternate suspects, the record is undisputed that the defense was informed that law enforcement had up to eleven suspects in mind. The defense did not pursue that information any further. Any evidence about alternative suspects could have been obtained and produced at trial with reasonable diligence, and [Beeman] knew about the existence of alternative suspects." (internal citation omitted)). "A claimed lack of knowledge is not provided as a ground for exception from the effects of the statute of limitations." *Lopez-Penaloza v. State*, 804 N.W.2d 537, 542 (Iowa Ct. App. 2011) (cleaned up). But even so, this claim was finally adjudicated in the previous proceeding, and so the lid is shut on that claim. *See* Iowa Code § 822.8. Under section 822.3 "the focus of our inquiry has been whether the applicant was or should have been alerted to the potential claim before the limitation period expired." *Cornell v. State*,

529 N.W.2d 606, 611 (Iowa Ct.App.1994); *see Lopez-Penaloza*, 804 N.W.2d at 542. Because Beeman failed to exercise due diligence and investigate these claims earlier, he fails to circumvent the time bar under section 822.3 and, in any event, this argument was already made and decided in an earlier proceeding.

3. *False Confession.* Beeman's first, second, and third claims all attack the credibility of his confession.[5] This was not properly developed in the appellate briefing, and we find Beeman has waived these challenges. But we note that we have previously adjudicated the credibility of his confession and "that ship has sailed." *Beeman III*, 2022 WL 2826015, at *4 (quoting *Beeman II*, 2021 WL 4891010, at *5); *see also Beeman* , 108 F.3d at 184–85 (finding his counsel was not ineffective for failing to suppress his confession and based on the facts there "was simply not enough to justify suppression of the confession"); *Beeman I*, 315 N.W.2d at 778–79.

4. *Updated Scientific Methods and Cognitive Bias.* Even if we considered his undeveloped fourth and fifth claims, Beeman's challenge would fail. His fourth claim about blood stain pattern analysis is not supported by "new" scientific evidence and could have been discovered with due diligence. The blood stain analysis relies on scientific treatises from 2009 and publications from 2013 as "current practice." Likewise, his fifth and final claim of cognitive bias relies on science from as early as 2013 and 2015. Beeman's claims fail because he could

---

[5] Beeman relies on false confession case law from 2002 and science from 2009. The science relied on by Beeman for establishing false confessions is not new. Beeman could have brought this claim earlier if he had exercised due diligence.

have brought these claims earlier if he had acted with due diligence. *See Harrington*, 659 N.W.2d at 521.

Beeman has either already litigated claims, failed to bring potential claims within the limitations period, or based claims on science that has been around for years. Any of his claims previously adjudicated cannot be relitigated now. *Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986) ("Issues that have been raised, litigated, and adjudicated on direct appeal cannot be relitigated in a postconviction proceeding.").

We find Beeman's actual-innocence claims are time barred under section 822.3.

5. *Evidentiary Hearing.* As for Beeman's claim that he should have been granted an evidentiary hearing, he fails to cite any authority requiring an evidentiary hearing before the court can grant a motion to dismiss, especially when a PCR applicant has "attempt[ed] to repackage and relitigate the same issue" previously litigated and affirmed on appeal. *Dewberry v. State*, 941 N.W.2d 1, 6–10 (Iowa 2019). An evidentiary hearing is not required in all cases for a PCR court to dismiss claims in an application. *See* Iowa Code § 822.6. ("The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue."). In 2021, upon reviewing Beeman's motion for new trial, we were "unable to conclude the alleged exculpatory evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict' and evidence does not entitle Beeman to a new trial." *Beeman II*, 2021

WL 4891010, at *5. Even more, Beeman admitted to killing the victim in a signed confession, where he explained specific details that included how they got to the park and their sexual encounter, ultimately confessing that he kicked the victim in the head with his steel-toed boot. The jury heard testimony from the pathologist who performed the autopsy that the victim had a head injury. Additionally, the jury heard testimony from a deputy about a conversation he had with Beeman. When discussing how he could escape custody, Beeman claimed, "The way I would do it is to kick you in the head just the way I did to her." The deputy responded to Beeman, "Well, I don't think you can outrun a bullet." To which Beeman replied, "Well, if I kicked you in the head, you'll be on the ground dead and you won't be able to use your gun."

Under *Schmidt*, Beeman would need to show by clear and convincing evidence that "in light of all of the evidence" no reasonable fact finder could convict him. *Schmidt*, 909 N.W.2d at 797. As the district court noted under this standard Beeman "falls short." We agree. Upon our review for correction of legal errors, we find the district court properly dismissed Beeman's actual-innocence claims.

**B. Destruction of Evidence.** Turning to the claim preserved on remand, Beeman argues he is entitled to a new trial under *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), because "the State failed to preserve critical biological evidence in this case in bad faith." As the PCR court noted, Iowa courts have adopted the bad faith standard from *Youngblood*. If a "criminal defendant can[not] show bad faith on the part of the police," when the State failed to preserve evidence that "*could have been* subjected to tests, [and] the results . . . *might* have exonerated the defendant," then the "failure to preserve potentially useful evidence does not

constitute a denial of due process of law." *State v. Dulaney*, 493 N.W.2d 787, 791 (Iowa 1992) (citation omitted). "Where the lost evidence is only potentially exculpatory, where by its nature the lost evidence cannot be evaluated by a fact finder, a due process violation will not be found in the absence of a showing of bad faith." *State v. Craig*, 490 N.W.2d 795, 796–97 (Iowa 1992) (emphasis omitted). "An example of lost evidence that would not be subject to evaluation would be a blood sample, withdrawn to test its alcoholic content but not tested prior to its loss." *Id.* at 797 n.2.

Indicators of bad faith by the police include "the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," and "whether the circumstances show that the State acted to gain a tactical advantage or to harass the defendant." *State v. Dantzler*, No. 09–1363, 2010 WL 3155229, at *4 (Iowa Ct. App. Aug. 11, 2010) (citations omitted). "There is no showing of bad faith if the evidence is disposed of in accordance with department policy. Inadvertent or negligent destruction also does not support a finding of bad faith." *Id.* (citation omitted). In *Craig*, a defendant brought a claim that the State's failure to maintain evidence that was never documented as being within police custody was a due process violation. 490 N.W.2d at 797. The court in *Craig* hypothesized that even if the evidence "had been destroyed by the police, at most the destruction would have been no more than negligent." *Id.* While the department procedures here were wholly lacking by any standards, we note that it has only been established that the evidence no longer exists at the law enforcement center, not that it was destroyed. The State points to the failure of Beeman to establish any "intentionality" in conduct by the State. *See Dulaney*, 493 N.W.2d at 791

(analyzing if the State intentionally destroyed the sample to deprive the defendant of the evidence).

Beeman argues the State's loss of the "biological evidence," including the sexual assault kit with blood and sperm samples and the victim's clothing that had blood and hair on it, was in bad faith. Sometime after Beeman's 1980 trial the evidence was either lost or destroyed, and it is unknown when or how. In 1986, the district court ordered that "all of the property" held by the sheriff's office or clerk of court's office be returned to Beeman. His mother signed an affidavit and testified that she picked up his belongings from the sheriff's office "[a]t some point after the trial" but did not receive everything she expected. The State contends it is unknown what happened to this evidence, but it most likely was given to Beeman's mother, although that position was disputed through testimony of the law enforcement witnesses.[6]

As his counsel said at trial "Beeman has the burden to prove that the evidence was destroyed or lost in bad faith." Beeman failed to meet that burden. Beeman's expert, Dr. Charlotte Word, testified that deoxyribonucleic acid (DNA) identification was first used in a United States court case six years after Beeman's trial. There is no proof that the State knew the evidence would exonerate Beeman.

---

[6] Beeman presented testimony that this would not have occurred. Beeman's counsel questioned Sergeant Jacob McCleary, who is employed by the Muscatine County Sheriff's office as a custodian for the evidence room since 2021. Counsel asked, "And have you ever given a sexual assault kit to a defendant's mother?" McCleary answered, "No, not that I'm aware of. I don't know that I ever released a sexual assault kit, period, unless it's gone to the lab." Beeman's counsel also questioned Chet Epperson, a police practitioner consultant and retired police chief, who testified that, "You would never, ever, and I know it's a superlative but it is, release sexual assault kit to a non-law enforcement person."

As the district court found, "[i]t is impossible for the Court to impute knowledge of the potential exculpatory value of evidence to those who lived before that value was widely known." *See Foster v. State*, 378 N.W.2d 713, 718 (Iowa Ct. App. 1985) ("There is no due process violation if the exculpatory nature of the evidence is not known before it was destroyed.").

As a further consideration, the blood from the sexual assault kit matched the blood type of the victim. The blood type matching the victim does not exonerate Beeman or prove that another person may have been at the scene. Likewise, hairs on Beeman's clothing that did not match him or the victim in no way exonerate him. Even if the State destroyed that evidence, it would not be enough to prove bad faith. *See Craig*, 490 N.W.2d at 797 (hypothesizing that undocumented destruction would be at most negligence, not bad faith).

Here, there is no proof that the State destroyed the evidence in bad faith. We conclude Beeman has failed to show bad faith on part of the State in the loss or destruction of evidence.

### IV. Conclusion.

We affirm the dismissal of Beeman's actual-innocence claims because they are time-barred and, even if Beeman had presented his evidence at the hearing on the motion to dismiss, he could not meet his burden under *Schmidt*. Additionally, we affirm the denial of Beeman's PCR application related to the missing evidence because he is unable to show the State acted in bad faith.

**AFFIRMED.**